# CHARLESTON.

## Yokum, Commissioner v. Fickey et al.

Submitted January 24, 1893.—Decided March 25, 1893.

1. Forfeiture—Delinquent and Forfeited Lands—Redemption.

In order that the former owner of land, which has been forfeited for nonpayment of taxes or for failure to have the same entered on the commissioner's books for the purpose of taxation, may be entitled to redeem the same, he must within the time prescribed by statute file his petition in the Circuit Court, stating his title to such lands with evidence thereof, and show by full and satisfactory proof, that, at the time the title to said land vested in the State, he had good and valid title thereto, legal or equitable, superior to any other claimant thereof.

2. Forfeiture—Delinquent and Forfeited Lands—Redemption.

The forfeiture of such lands as became forfeited by omission, called "omitted lands," became complete on the 1st day of November, 1836, and the subsequent acts treated them as forfeited, and, although further time to redeem was given, the forfeitures which had accrued by prior laws were not released except in such cases as the owner availed himself of the privilege to redeem.

3. Forfeiture—Delinquent and Forfeited Lands—Redemption.

In such cases the failure to enter and pay the taxes due on the land and the damages, in the manner prescribed by the act of February 27, 1835, caused the forfeiture to become absolute and complete, and no inquisition, judicial proceeding or inquest or finding of any kind was necessary to consummate such forfeiture.

4. Forfeiture—Delinquent and Forfeited Lands—Redemption.

Where a tract of land had been omitted from the commission-

er's books and had thus become forfeited to the State under said act of February 27, 1835, the fact of entering the same on the commissioner's books in the year 1866 did not relieve it from said forfeiture.

5. FORFEITURE—DELINQUENT AND FORFEITED LANDS—REDEMP-
TION.

In order that a party may be entitled to land, which has been forfeited to the State ¡of Virginia or West Virginia, by transfer, the party so claiming title by transfer must show himself to be entitled thereto by bringing himself within one of the three classes of persons described in section 3 of article XIII of the constitution, which section was carried into the statute and is found embodied in section 40 of chapter 31 of the Code of 1887.

6. FORFEITURE—DELINQUENT AND FORFEITED LANDS—REDEMP-
TION.

A case in which a party filing his petiton for the redemption of certain lands therein set forth was entitled to the relief prayed for.

W. T. ICE and E. D. TALBOTT for appellants cited, Code, (1887) c. 105, s. 5, 14; Id. c. 31, s. 40; Id. (1869) c. 31, s. 34; Id. (1849) c. 114, s. 1, 3; Id. (1860) c. 114, s. 1, 3; ʻActs 1872–3, c. 117, s. 39; 2 Rev. Code, 508–10, 515; Id. 517, 524, 528; Id. 518, 525, 529, 530; Sup : Rev. Code, 345–347; Acts 1831, Dec. 16; Acts 1834, March 11; Acts 1835, Feb. 27; Acts 1836, March 23; Acts 1838, March 15; Acts 1841–2, c. 13, s. 3; Acts 1842–3, c. 13, s. 1; Acts 1845–6, c. 6, s. 3; Acts 1852, c. 18, s. 1, 2; Acts 1872–3, c. 117, s. 40; 15 Gratt. 199; 17 W. Va. 221; 10 Gratt. 418; 13 Gratt. 396; 1 Wash. 34; 1 Munf. 169, 170; 11 Gratt. 427; 1 Gratt. 192, 198; 1 Gratt. 225; 32 Gratt. 28; 24 W. Va. 246; 28 W. Va. 35; 5 Gratt. 141; Titles, §§ 365, 370; 75 Va. 356; 2 Blackw. Tax Tit. § 728; Broom. Leg. Max. 122.

FRANK WOODS for appellees Fickey and Thomas cited, Code (1891) c. 105; ss. 16, 17; Id. (1868) c. 31, ss. 34, 43; Const. (1872) Art. XIII, ss. 3, 6.

ENGLISH, PRESIDENT :

On the 15th day of October, 1890, George W. Yokum, commissioner of school lands for Randolph County, filed his petition in the Circuit Court of said county, asking for the sale of a tract of land containing eight thousand acres for

the benefit of the school-fund, said land is described in his petition as the "eight thousand acres Fickey and Thomas land." On the following day Fred Fickey, Jr., and Edward L. Thomas filed their petition in said cause, praying that they be allowed to redeem said tract of eight thousand acres, claiming that they were the owners thereof by virtue of a patent issued to them from the state of West Virginia on the 22d day of April, 1867. Said cause was referred to a commissioner, who made a report therein on the 16th day of December, 1891, to which report said Fickey and Thomas filed twelve exceptions.

Said commissioner reported that said Fickey and Thomas tract of eight thousand acres was located on the Shavers fork of Cheat river in said county of Randolph, and was surveyed for said Fickey and Thomas on the 19th day of May, 1861; and that on the 22d day of April, 1867, the governor of this State issued a grant to said Fickey and Thomas for said tract of land, which was duly recorded in said county on the 28th day of July, 1883; that said tract of land was entered upon the land books of said county for the year 1883, and assessed for taxes for said year, and has been so assessed ever since; that said tract had never been assessed with taxes until the year 1883, and thereby became forfeited for the years commencing with 1868 and ending with 1882, and that the taxes and interest due thereon amounted to the sum of one thousand five hundred and seventy one dollars and seventy two cents on the 1st day of May, 1891; that said land became forfeited in the name of Fickey and Thomas in the year 1873, because of the failure of the said Fickey and Thomas to enter the same upon the land-books of Randolph county for the five successive previous years, and cause themselves to be charged with the taxes thereon, and pay the same; that the greater part of said tract of eight thousand acres was covered by a large survey known as the " Henry Banks survey of thirty six thousand acres," which was surveyed for said Henry Banks on the 8th day of March, 1795, and that said survey of thirty six thousand acres was conveyed and passed regularly from said Banks down to the present owners or claimants, Dewing & Sons, who acquired their title from Ario Pardee

and Benjamin Rich, by deed dated the 4th day of November, 1885; that at the time of the forfeiture of said Fickey and Thomas tract they had the legal title thereto by reason of the grant from the governor of West Virginia, aforesaid; that at the same time Ario Pardee and Benjamin Rich had legal title to said large tract of thirty six thousand acres by reason of deed from Jacob W. Heavener, administrator *de bonis non* with the will annexed of Henry O. Middleton, deceased, dated December 21, 1872; that James H. Dewing, and those under whom he claims and holds title, caused said tract of thirty six thousand acres to be placed upon the land-books of said county of Randolph in the year 1866, and assessed with the taxes for said year, and that said tract of thirty six thousand acres had been regularly assessed with the taxes for all the years since 1866, and said taxes have been paid; that said James H. Dewing, for Dewing & Sons, contracted for said land in September or October, 1885, and soon thereafter obtained their deed dated on the 4th day of November, 1885, and took immediate posession of the same by building houses, clearing, improving the land, cutting timber and by publishing notice in the Randolph Enterprise, a weekly newspaper published in said county, that they had purchased the land, and posted the same, and thereby warned the public and all trespassers that they would be dealt with according to law, *etc.;* that the whole of said eight thousand acres Fickey and Thomas land lies within said thirty six thousand acres James H. Dewing land, except one thousand and ninety six acres thereof, which lies within a tract of land known as the "Nellie L. Maynard twenty five thousand acres," that eighty five acres of this one thousand and ninety six acres lies in the county of Pocahontas, in this State, and was proceeded against several years anterior to the date of said report by the commissioner of school-lands for said last-named county as waste and unappropriated lands, and was decreed by the Circuit Court of said county to be sold and was sold, under said decree, and purchased by citizens of said county of Pocahontas, who conveyed the same to A. H. Winchester, who conveyed it to the present owner, James H. Dewing, by deed bearing date May 11, 1885,

and of record in Pocahontas county; that the residue of said one thousand and ninety six acres, being one thousand and eleven acres, lies within and is covered by the said survey or tract of land owned by Nellie L. Maynard as aforesaid; that the said James H. Dewing took possession of said eighty five acres at the same time he took possession of the thirty six thousand acres aforesaid; that the said James H. Dewing, Nellie L. Maynard, and Fickey and Thomas all claimed adverse titles to the said eight thousand acres of land at the date of the forfeiture in 1873; that is to say, the said Dewing, or those under whom he holds title, claimed six, thousand nine hundred and four acres of said eight thousand-acre tract, and said Nellie L. Maynard, or those under whom she holds title, claimed the residue of said tract, or one thousand and ninety six acres; that said Nellie L. Maynard holds said land by a deed from S. A. Pugh, etc., to her, dated January 10, 1873, and a deed from James D. Wilson, clerk, to her, dated February 19, 1875; that the said Dewing and the said Nellie L. Maynard, as well as the said Fickey and Thomas, titles to the said lands above mentioned, have all passed regularly fom the commonwealth of Virginia and from this State to them respectively; that the said twenty five thousand acres was placed upon the land-books of this county in the year 1870, and assessed with taxes in the name of Samuel A. Pugh, who then had the title thereto by virtue of a deed from Charles de Selding to him, dated August 1, 1865, and recorded; Charles de Selding got that title from Edward de Selding and others, referring to deed-books, where the same is recorded; also the Surveyor's Book No. 1., where it appears the same was duly surveyed for Standish Ford under and by virtue of certain treasury-warrents from the commonwealth of Virginia; that the said Dewing derived his title from Pardee and Rich, who got title from J. W. Heavener, administer, etc., citing the deeds, by which the title was conveyed, and referring to the Surveyor's Book No. 1, page 153, for the survey made for Henry Banks from the commonwealth of Virginia; that the said Nellie L. Maynard, and those under whom she claims and holds title, have paid all taxes since and including the year 1870 to the present date.

Said commissioner, therefore, was of opinion that the said Fickey and Thomas, claimants of the said eight thousand acres, were debarred from redeeming the same for the reasons before stated, and that the said eight thousand acres of land had long since become vested and merged in the said James H. Dewing title and that of the said Nellie L. Maynard, under the provisions of section 3 of article 13 of the constitution of this State ; that the said survey of Fickey and Thomas contains in fact eight thousand seven hundred and fifty eight acres.

Said commissioner returned with said report the deposition of B. M. Yeager and E. D. Talbott, and concluded his report as follows :   "But should the Court be of the opinion from the evidence filed herewith that the said title of Fickey & Thomas to the said eight thousand acres (which is in fact eight thousand seven hundred and fifty eight acres) has not so become vested and merged in the said title of the said Dewing and in the title of the said Nellie L. Maynard to the thirty six thousand acres and the twenty five thousand acres respectively, then the said Fickey & Thomas have the right to redeem the same from the forfeiture aforesaid by the payment of the taxes, interest, and the costs of these proceedings ; and the taxes and interest necessary to redeem the said land so asked to be redeemed by said Fickey & Thomas amount to the sum of one thousand five hundred and seventy one dollars and seventy three cents on the 1st day of May, 1891."

To this report the defendants Fickey and Thomas, by their attorney, filed fifteen exceptions, and on the 4th day of May, 1891, the said Fickey and Thomas filed in open court the affidavit of said Fickey and Thomas in support of said exceptions, and moved court to recommit said report to Commissioner Ward, or some other commissioner, with instructions to return with his report, as part thereof, all evidence produced before or considered by him in said proceeding ; and the court, without then passing upon said exceptions, decreed that said report be recommitted to said Commissioner Ward, who was instructed to execute the order of reference made therein at October term, 1890, making Nellie L. Maynard by name a party to the notice

named in said order; and said commissioner was further instructed to return with his next report all evidence produced before or considered by him in executing said order of reference. In pursuance of said decree the said commissioner executed and returned his second report, arriving at the same conclusion as he did in the first, and returning the evidence, upon which he based his report therewith.

On the 6th day of December, 1891, said Frederick Fickey, Jr., and Edward L. Thomas, by their attorney, filed twelve exceptions to said last-named report, which exceptions are in the words and figures following: "(1) Because it fails to report that at the time the title to said eight thousand-acre tract of land was vested in the state Fickey and Thomas had good and valid legal title thereto, superior to any claimant thereof. (2) Because it reports that the title of Fickey and Thomas became forfeited to the state. (3) Because it reports that the title of Fickey and Thomas became forfeited to the state in the year 1873. If this title was ever forfeited at all, it was in the year 1875, under section 39, c. 117, Acts 1872–73, because not entered upon the commissioner's books for five successive years after the year 1869. (4) Because it reports that at the time of the forfeiture thereof, in the year 1872, Benjamin Rich and Ario Pardee, held an adverse legal title to seven thousand six hundred and sixty two acres of said land by reason of a deed dated 1872, from Jacob Heavener, administrator *de bonis non* with the will annexed of Henry O. Middleton. (5) Because it reports that Nellie L. Maynard held an adverse legal title to one thousand and ninety six acres of said land by reasen of a deed dated 10th January, 1873, from Samuel A. Pugh. (6) Because it reports that James H. Dewing has title to one thousand and ninety six acres of land under deed from A. H. Winchester to him, dated 25th February, 1886. (7) Because it reports that said titles of James H. Dewing and Nellie L. Maynard have both passed regularly to them, respectively, from the commonwealth of Virginia and the State of West Virginia. (8) Because it reports that the Banks survey of thirty six thousand acres was entered upon the land books of Randolph county, in the year 1881, in the name of Benjamin

Rich, and assessed with the taxes for that and the previous year, and that in the year 1882 the said thirty six thousand-acre tract of land was so entered upon the said land books in the name of Ario Pardee and Benjamin Rich, and assessed and charged with taxes thereon for the year 1878 and all subsequent years, to and including the year 1891, and that the taxes so assessed have been paid. (9) Because it reports that Nellie L. Maynard has been assessed with taxes on said Ford survey of twenty five thousand acres from the year 1875 to the year 1891, which have all been paid. (10) Because it reports that Fickey and Thomas 'are estopped from redeeming' said eight thousand-acre tract of land, or any part thereof, in this proceeding. (11) Because it reports that the title of Fickey and Thomas to this land 'has long since become vested and merged in the title of James H. Dewing and Nellie L. Maynard, under section three of article thirteen of the Constitution of West Virginia.' (12) Because it taxes as part of the costs, contrary to the evidence, the following items, viz : To Clerk County Court of Randolph, fifteen dollars and fifty five cents— or any other sum whatever; to clerk County Court Upshur county, two dollars and ten cents; to recorder Va. land office, three dollars; to auditor of West Va., nine dollars."

On the 12th day of July, 1892, said cause was heard upon the petition of Commissioner George W. Yokum; upon the petition of said Fickey and Thomas; upon the report of Commissioner Ward, completed and filed in the clerk's office on the 16th day of December, 1891, and upon the exhibits, papers, and depositions returned with said report, and two petitions as part thereof; upon the twelve exceptions of Fickey and Thomas to said report, numbered consecutively from one to twelve, both inclusive, dated the 14th day of January, 1892—upon consideration whereof the court decreed that the exceptions of Fickey and Thomas, numbered respectively, one, three, four, five, six, ten, eleven, and twelve, be, and the same were, sustained, and that their other four exceptions be, and the same were, overruled, and held that the said Fickey and Thomas are and were on the 16th day of October, 1890, entitled to redeem the whole of said eight thousand-acre tract of land mentioned in their

petition, and granted them by the State of West Virginia by patent dated the 22d day of April, 1867; and, it further appearing to the court that the sum necessary to redeem the said land is one thousand five hundred and seventy one dollars and seventy two cents, and that the money paid into court on the 16th day of October, 1890, by said Fickey and Thomas, for the purpose of redeeming said land, was in excess of the sum necessary for that purpose, it was decreed that the whole of said eight thousand-acre tract of land (which in fact contains eight thousand seven hundred and fifty eight acres) is redeemed from forfeiture, so far as the title thereto was in the State immediately before the date of said decree, but that said redemption should in no wise affect or impair any right, title or interest any other person or persons might have in said real estate, or any part thereof, under and by virtue of section 3 of article 13 of the constitution of this State; and directed in what manner the money paid into court by said Fickey and Thomas should be applied; and from this decree the said Dewing & Sons obtained this appeal.

The first error assigned and relied on by the appellants is that the court erred in sustaining exceptions Nos. one, three, four, five, six, ten, eleven, and twelve, to Commissioner Ward's report, filed on the 16th day of December, 1891.

In considering the questions raised by these exceptions we will examine first said exception No. 1, which raises the question directly whether at the time the title to said eight thousand acres of land was vested in the State said Fickey and Thomas had a good and valid legal title thereto, superior to any claimant thereof. This question is material in determining the right of said Fickey and Thomas to redeem said land, for the reason that our statute (Code 1887, c. 105, § 14) provides that "any owner may within the time aforesaid (meaning two years) file his petition in the said Circuit Court, stating his title to such lands, accompanied with the evidences thereof; and upon full and satisfactory proof that at the time the title to said lands vested in the State he had a good and valid title thereto, legal or equitable, superior to any other claimant thereof, such court shall or-

der the excess mentioned in the next preceding section be paid to such owner," *etc.;* and again, in the same section, it is provided that "at any time during the pendency of the proceedings for the sale of any such land as hereinbefore mentioned such former owner * * * may file his petition in said Circuit Court, as hereinbefore provided, and asking to be allowed to redeem such part or parts of any tract of land so forfeited, or the whole thereof, as he may desire; and, upon such proof being made as would entitle the petitioner to the excess of purchase-money hereinbefore mentioned, such court may allow him to redeem the whole of such tract, if he desire to redeem the whole," *etc.*

Had Fickey and Thomas, at the time the title to said land vested in the State, a good and valid title thereto, legal or equitable, superior to any other claimant thereof? It appears that on the 19th day of May, 1861, the surveyor of Randolph county surveyed for Fred Fickey, Jr., and Edward L. Thomas, by virtue of land office treasury warrant No. ——, a tract of land in Randolph county, on Cheat mountain, containing about eight thousand acres. This entry was not carried into grant by reason of the war, but section 1 of article 9 of the constitution of 1863 provides that "all rights and interests in lands in this State, derived from or under the laws of the State of Virginia prior to the time this constitution goes into operation, shall remain valid and secure, and shall be determined by the laws heretofore in force in the State of Virginia." The right to redeem this eight thousand-acre tract of land by Fickey and Thomas is contested by Dewing & Sons, or James S. Dewing, who claims to hold the same for Dewing & Sons by regular conveyance from Henry Banks, to whom the thirty six thousand-acre tract, which includes the greater portion of said eight thousand-acre survey, the residue of which is covered by what is known in the record as the "Standish Ford Survey," was patented by the Commonwealth of Virginia in 1795.

The consecutive conveyances from Henry Banks to James S. Dewing appear as a part of the commissioner's report. Seven thousand six hundred and sixty two acres of the land claimed by Fickey and Thomas lie within the calls of the

Banks patent, and one thousand and ninety six within the boundaries of the Standish Ford patent, and Dewing & Sons only claim said seven thousand six hundred and sixty two acres; but when we come to trace the title from Banks down, we find the title was vested in the State of Virginia, and not in Banks, in 1815, and was in that condition when Banks made his deed to Denny in 1830, and also when Denny, in the same year, conveyed it to Hector, and when Hector in 1834 conveyed it to Chapman and French, and when Chapman and French deeded it in 1841 to Middleton; and it so continued in 1872, when Middleton's personal representative deeded it to Rich and Pardee, and in 1885, when they deeded it to Winchester, who, in 1886, deeded it to Dewing.

It appears that, although said thirty six thousand-acre tract was conveyed to Middleton in 1841, he never caused it to be entered on the land books until 1866, a period of twenty five years having elapsed between the date of his deed and such entry upon the commissioner's books; and even then he failed to charge it with back taxes for any year prior thereto.

In the case of *Smith* v. *Tharp*, 17 W. Va. 231, GREEN, P., in delivering the opinion of the Court, refers to the requirements of the statute with reference to placing lands upon the commissioner's books, and says: "The act of February 27, 1835 (see Sess. Acts 1834–35, p. 12, c. 13, § 2) expressly provides 'that every owner of a tract of land shall, on or before July 1, 1836, enter, on the books of the commissioners of the county wherein such tract of land lies, such tract of land, and have it charged with all taxes and damages in arrear, and actually pay the same; and, upon his failure to do so, such tract of land, if not then, February 27th, 1835, in actual possession of the owner, should become forfeited to the State after July 1st, 1836.' The time for making this entry of omitted lands, when they had not been omitted since 1831, was extended by the act of March 23, 1836, to November 1, 1836 See Sess. Acts 1835–36, p. 7, c. 3, § 1. Neither the possession of the land nor the entry of it on the commissioner's books, after the land became, under those acts,

absolutely forfeited, could divest the title of the common-wealth."

ALLEN, President, delivering the opinion of the Court in the case of *Usher's Heirs* v. *Pride*, 15 Gratt. 199, says: "The forfeiture of such lands returned as delinquent became complete on the 1st of October, 1834. The subsequent acts treated them not as lands returned delinquent merely, but as lands forfeited; and, although further time to redeem was given, the forfeitures which had accrued by prior laws were not released except in such cases where the owner availed himself of the privilege to redeem."

See the case of *Staats* v. *Board*, 10 Gratt. 400, Syll. p't which holds, that "the act of March 30, 1837 (Sess. Acts, p. 9) giving time for redemption until the 15th of January, 1838, did not release the forfeiture which had accrued, except in cases where the owner or proprietor availed himself of the privilege of redemption;" and point 3 of syllabus: "The forfeiture in such case became absolute and complete by the failure to enter and pay the taxes due on the land, and the damages, in the manner prescribed by the act of February, 27, 1835, and no inquisition or judicial proceeding or inquest or finding of any kind was required to consummate such forfeiture."

The land in the case under consideration never having been redeemed by Middleton, the mere fact that it was entered in the year 1866 upon the commissioner's books, from which it had been omitted for twenty five years, did not relieve the land from forfeiture. The title, by reason of the forfeiture, was vested in the state of Virginia by reason of the failure to place said land upon the commissioner's books, and appears to have been so vested in 1861, and was subject to entry at the time the same was surveyed for Fickey and Thomas; and the same may be said with reference to the one thousand and ninety six acres, which lie without the Banks thirty six thousand acre survey, and are included in the Standish Ford twenty five thousand acre survey.

This land appears to have been placed on the commissioner's books for the years 1805 and 1807, but was returned delinquent for the nonpayment of taxes, and was

never afterwards placed on the land-books in his name, and was forfeited for nonentry on the commissioner's books. The heirs at law of said Ford executed a deed in 1865 through their attorney in fact to one Samuel A. Pugh for said twenty five thousand acres, which embraces one thousand and ninety six acres of the land included in said Fickey and Thomas eight thousand-acre tract; and in 1873 Samuel A. Pugh made a deed for the entire twenty five thousand-acre tract to Nellie L. Maynard, who is made a party to this proceeding. The title to this twenty five thousand acres having been forfeited to the state long prior to 1865, and never having been redeemed by any of the modes prescribed by statute, the said Pugh took nothing by his deed, and as a matter of course could confer nothing upon said Nellie L. Maynard.

It is, however, claimed that the title of Fickey and Thomas was transferred to Dewing by virtue of section 3 of article 13 of the constitution of 1872, which was carried into and made part of our statute, and is found in section 40 of chapter 31 of the Code of 1887. Under this law, "all title to lands in this state heretofore forfeited or treated as forfeited, waste and unappropriated, escheated, and irredeemable lands, may be transferred (in all cases, excluding those for whose default the land was forfeited or returned delinquent, their heirs or devisees)—First, to any person, for so much thereof as such person has or shall have had actual continuous possession of under color or claim of title for ten years, and who, or those under whom he claims, shall have paid the state taxes thereon for any five years during such possession; second, or, if there be no such person, then to any person for so much of said land as such person shall have title or claim to, regularly derived, mediately or immediately, from or under a grant from the commonwealth of Virginia or of this State, not forfeited, which, but for the title forfeited, would be valid, and who, or those under whom he claims, has or shall have paid all state taxes charged or chargeable thereon for five successive years after the 1865; third, or if there be no such person as aforesaid, then to any person for so much of said land as such person shall have had claim to, and actual continuous pos-

session under color of title for any five successive years after the year 1865, and have paid all state taxes charged and chargeable thereon for said period.

Under the evidence adduced before the commissioner, can we say that Dewing can maintain his claim to the forfeited title of Fickey and Thomas by transfer from the State? In order that he should sustain this position under the first clause, it was necessary that said Dewing should have had actual continuous possession of the land under color or claim of title for ten years, and that he, or those under whom he claims, should have paid the taxes thereon for any five years during such possession. Now, the character of the possession, as shown before the commissioner, was not such as would entitle said Dewing to such transfer under said first clause.

A. H. Winchester says in his deposition that "on the 6th day of November, 1885—the second day after the deed from Ario Pardee and Rich to me for the Banks survey of thirty six thousand acres—I commenced lumbering on the Fickey and Thomas eight thousand-acre survey, and continued to lumber thereon until June, 1887. After that date the lumbering was done by George Steele, foreman for Dewing & Sons, for a year or so afterwards." About June, 1886, Winchester also states that he inclosed about two acres of the Fickey and Thomas land with a log fence, and sowed the parcel in grass. This evidence shows the only possession taken by Dewing, or those under whom he claims, of the Fickey and Thomas land.

That cutting of timber and temporary and interrupted occupancy of this character do not constitute actual possession was held by this Court in the case of *Core* v. *Faupel*, 24 W. Va. 246, when SNYDER, J., in delivering the opinion of the Court, said: "The test, then, of the exclusive possession is the existence or nonexistence of actual possession. If the owner is in possession of any part of the tract, he is in possession of the whole, and, of course, the intruder can not then have the exclusive possession of any part of it, unless by his *pedis positio* he effects an ouster of the owner; and even then his possession will be confined to his actual inclosure from which he has expelled the

owner. It must be continuous. If the land is of a character to admit of permanent useful improvement, the possession must be kept up during the whole statutory period by actual residence, or by continued cultivation or inclosure. Surveys, cutting wood, occasional occupancy, with payment of taxes will not do."

Again, in the case of *Oney* v. *Clendenin*, 28 W. Va. 35, fourth point of syllabus, this Court held : "Adversary possession, to effect an ouster of the owner of land, must be open, visible, and exclusive, as well as continuous and uninterrupted, and must be under either claim or color of title. If under claim of title only, the claimant must have actual possession of the land by inclosing under fence, or by clearing it, or in some other visible and notorious manner; and the merely cutting and removing timber from time to time from the land under claim of title will not constitute adversary possession." See, also, the case of *Pasley* v. *English*, 5 Gratt. 141, where it is held that "a temporary possession of land by cutting and sawing timber upon it is not such adversary possession as will give title."

So far, then, as the evidence tends to show possession of said eight thousand-acre tract of land by lumbering and cutting timber, which was interrupted and occasional, we can not regard it as the character of possession which would confer title by transfer either under the first or under the third class of persons mentioned in the constitution, because said Dewing had no actual, continuous possession of the same, or any part thereof, for ten years; neither has his possession been of that character for five years which is required under the third class.

If it be conceded that the fence built by Winchester, which included about two acres of the eight thousand-acre tract, although the buildings and the greater portion of the inclosure were outside of the eight thousand-acre, constituted actual adversary possession of the eight thousand-acre tract which would be of the character to eventually work a transfer, yet, said inclosure having been constructed only four years and three months prior to the time of redemption, the time would be too short to constitute a transfer under the third class, so that neither the inclosure nor

cutting of timber claimed to have been done by Dewing would preclude Fickey and Thomas from their right to redeem.

Said Dewing can not hold the title to said land by transfer under the second class of persons designated in the constitution, for the reason that he claims under the Banks patent, which, as we have seen, was forfeited years before he obtained his deed; and, in order to be entitled to transfer of title under that class, he must claim under a grant from the commonwealth of Virginia or this State, not forfeited, which, but for the title forfeited, would be valid; that is, under a grant in this case not forfeited, and which, but for the Banks title, would be valid.

For these reasons we are of opinion that the Circuit Court committed no error in sustaining exceptions numbered respectively 1, 3, 4, 5, 6, 10, and 11, filed by said Fickey and Thomas to the report of Commissioner Ward, filed December 6, 1891, and also in sustaining exception No. 12 to the same, for the reason that it relates to a matter of costs, which this Court will not review. Neither do we regard the action of the court in holding that said Fickey and Thomas were, on the 16th day of October, 1890, entitled to redeem said eight thousand-acre tract of land mentioned in their petition, and granted to them by the State of West Virginia by patent dated the 22d day of April, 1867, as erroneous.

The decree complained of is therefore affirmed, with costs and damages, and the cause is remanded for further proceedings, which it is thought proper to say must conform to the statute recently passed by the legislature at its session in 1893, and which took effect from its passage.

AFFIRMED.    REMANDED.