# CHARLESTON.

SUMMERFIELD *v.* WHITE.

Submitted June 8, 1903—Decided December 5, 1903.

| 54 | 311 |
|---|---|
| f62 | 586 |
| 63 | 17 |
| 63 | 496 |

| 54 | 311 |
|---|---|
| 64 | 456 |

1.  HUSBAND AND WIFE—*Deed.*

    Where a husband owns, in its entirety, one of two adjoining tracts of land and his wife an undivided one-eighth of the other, which she conveys to one of her co-tenants, by a deed, without warranty, in which her husband joins, reciting a description of the division line and one of its termini, different from that given in the deeds by which the husband obtained his lands, and referring to said terminus as an agreed corner; and, afterwards, by partition, another of her co-tenants obtains that portion of the land in which the wife owned a part, lying adjacent to said boundary line, and sues the husband and wife in ejectment for a small triangular piece of land the title of which depends upon the location of the division line, in the absence of title by adverse possession, the husband having conveyed his land to his wife in the mean time; the defendants are estopped by the recitals in their deed from relying upon the description of the division line contained in the deeds under which they claim, and cannot use said deeds as evidence of the location of the disputed line, if objected to by the plaintiff. (p. 316).

2.  REAL PROPERTY—*Description—Boundaries.*

    The description of the corner in controversy, contained in the deed executed by the defendants, reads as follows: "Beginning opposite Uriah White's house in the middle of Dry Fork at an agreed corner between Thomas S. White, decd. and Uriah White." *Held:* That as the description calls for no monument, which can be ascertained by mere inspection, and without measurement or calculation, and, opposite Uriah White's house Dry Fork is claimed to have two channels over thirteen poles distant from each other, in either of which, the point may be, as determined by the evidence, the description does not import such certainty of location as to estop the defendants from introducing evidence tending to show that the corner in ques-

tion is not a certain rock in one channel of Dry Fork, as claimed by the plaintiff, and the court properly overruled plaintiff's motion to strike out such evidence.  (pp. 316, 317)..

3.   REAL PROPERTY—*Instruction—Error.*

As the defendants had, by their deed, recognized and admitted the title of the plaintiff, it was error to instruct the jury, on the trial of the issue above stated, that the plaintiff must show title derived from the Commonwealth of Virginia or this State, or make out a title by adverse possession under color of claim of title.   (p. 820).

4.   EJECTMENT—*Title.*

When the defendant in an action of ejectment sustains such relation to the plaintiff as estops him from denying the title of the latter, the general rule, that the plaintiff must recover on the strength of his own title, and make out a chain of title from the State, is inapplicable.  (p. 321).

5.   REAL PROPERTY—*Title—Limitation.*

Actual, open, continuous, exclusive and hostile possession of land, for a period of ten years, under color or claim of title, confers a perfect title, upon which an action may be either defended or prosecuted, and which is not destroyed by mere abandonment of possession after such holding for such period of ten years, unless some other person has obtained title to the land, while such abandonment continued, by like possession for a like period.  (p. 324).

6.   REAL PROPERTY—*Tittle.*

Where the plaintiff relies upon such title, it is error to instruct the jury that such adverse possession must continue, without interruption, to the time of the institution of the action, if the evidence tends to show the completion of the required period of adverse possession long before the action was commenced.  (p. 322).

7.   DEED—*Warranty—Title.*

A deed without a covenant of warranty estops the grantor from asserting, against the grantee, any title to the land he had or claimed, at the time of its execution.  (p. 318).

8.   DEED—*Covenant—Title.*

A deed with covenant of general warranty estops the grantor from asserting, against the grantee, any title to the land he had or claimed, at the time of its execution, and also passes to the grantee any title to the land that the grantor may acquire afterwards.  (p. 319).

Error to Circuit Court, Randolph County.

Action by Lucy J. Summerfield against Uriah White and others. Judgment for defendants, and plaintiff brings error.

*Reversed.*

W. B. MAXWELL and HARDING & HARDING, for plaintiff in error.

McGRAW & POST, MOLLOHAN McCLINTIC & MATTHEWS, and BROWN & TALBOTT, for defendants in error.

POFFENBARGER, JUDGE:

Lucy J. Summerfield complains of a judgment of the circuit court of Randolph county, rendered against her as plaintiff in an action of ejectment, involving only the question of the location of a boundary line between her lands and those of the defendant, Hannah V. White, upon which depends the validity of her claim to the small triangular tract of land in controversy, containing about four acres. This disputed line was once a division line between two tracts of land, one of which was owned in its entirety by Thomas S. White, and the other by said Thomas S. White and Allen J. Currence as tenants in common. By the death of said Thomas S. White and subsequent conveyances by his heirs, in some of which said Hannah V. White and Urah H. White, her husband, joined, the former being an heir of said decedent, that portion of said first mentioned tract lying next to the disputed line became the property of the plaintiff. Briefly stated, the history of her title is as follows: Many years ago Thomas S. White placed his son, Harvey White, upon the tract of which the land now owned by the plaintiff was a part with the intention, it is said, of giving it to him but never made any conveyance. The son died first, leaving eight children of whom the plaintiff was one and the defendant, Hannah V. White, another. Prior to March 6, 1884, the father died and his heirs conveyed the tract on which the son had resided, containing about one hundred and twenty-three acres, to said eight children and their mother. By this conveyance, the plaintiff obtained one share in the tract. She then purchased the share of Madison White, her brother, and one-half of the share of Joseph, another brother. S. Lee White having obtained one share by the original conveyance, bought the shares of Phoebe Ketterman and the defendant, Hannah V. White, his

sisters, and one-half of the share of Joseph White. Martha Jordan and Mary Pennington sold their shares to C. S. Armentrout. By partition, after these conveyances, the plaintiff became the owner of the land next to the disputed line in its entirety. On the tract so partitioned, Harvey White had resided for a long time prior to his death, and thereafter his heirs resided upon it, until the date of the deed conveying the same to them, March 6, 1884, and immediately after the partition, which the evidence shows took place probably thirteen or fourteen years ago, the plaintiff took possession of the part allotted to her. Some of the deeds by which said land passed as aforesaid are somewhat awkwardly drawn. The one by which Madison G. White convcyed his interest to the plaintiff bears date December 24, 1884, and the defendant, Hannah V. White, and her husband, and the other brothers, and sisters of the plaintiff joined in it, and in the deed by which Hannah V. White conveyed her interest to S. Lee White, all the other brothers and sisters of S. Lee White joined. Each of these deeds conveyed an undivided one-eighth interest in the whole tract. As above stated, the land on the opposite side of the line was originally owned by Thomas S. White and Allen J. Currence in equal undivided shares, and they conveyed it by separate deeds dated, respectively, November 2nd and 20th, 1880, to said Uriah White who subsequently conveyed it to his wife, the defendant, Hannah V. White, by deed dated January 17, 1895. The land in dispute has not been enclosed by either of the parties and the question of its actual occupation is one concerning which there is some conflict in the testimony.

The southern terminus of the disputed line is not contested. At that point a sugar and elm are called for. The location of the other end of the line is in dispute. In the deeds from Thomas S. White and Allen J Currence to Uriah White, the corner at the northern end of the line is described as "a beech and sugar on the west bank of Dry Fork" and is said to run thence south twenty degrees west 125 poles. These deeds are dated in November, 1880. In the deed from the heirs of Thomas S. White to the heirs of Harvey White, dated March 6, 1884, and the deeds dated December 10th, and December 24th, 1884, made by the heirs of Harvey White, including the defendant, Hannah V. White, as above stated, the disputed

corner is described as follows: "Beginning opposite Uriah White's house in the middle of Dry Fork at an agreed corner between Thomas S. White, decd. and Uriah White," and the line running from the sugar and elm to said point is described in these deeds as running north 8 1-2 degrees east 104 poles. The beech and sugar called for in the deeds to Uriah White are not found and it is contended by the defendants that the agreed corner called for by the other deeds is something over thirteen poles east of the point contended for by the plaintiff and yet in the middle of Dry Fork. At this point in its course, Dry Fork River seems to have changed its channel. At least that is the contention of the defendant and the point they claim as the agreed corner is in what they call the old channel, on the west bank of which they claim the beech and sugar stood.

Upon the theory that the defendants are estopped by their deeds of December 10, 1884, and December 24, 1884, from denying that the rock in Dry Fork River at the point claimed as the corner by the plaintiffs, in what is called by the defendants the new channel plaintiffs moved the court to strike out all the evidence introduced by the defendants tending to show a different location of that corner. This motion the court overruled, and upon its action in so doing the first assignment of error is predicated. As no rock is called for in the deed and the location of the agreed corner therein mentioned can only be ascertained by resorting to extrinsic evidence, the estoppel, if any, created by the deed, cannot go to the extent claimed by counsel for the plaintiff in error. One of the essentials of a recital creating an estoppel is certainty and where that element is wanting, there can be no estoppel. Bigelow on Estoppel, 377, where Lord Tenterden is represented to have said it was a rule that an estoppel should be certain to every intent. The construction of the deed is for the court, but the location of the monuments and lines upon the ground is for the jury. Looking at the deed alone, it is impossible to say where a particular line or corner called for in the deed will be found upon the land. The calls contained in the deed must be applied to the subject matter and that goes beyond the mere matter of construction and requires the aid of a jury and the introduction of extrinsic evidence. If a monument called for by the deed is established by uncontradicted evidence it becomes binding upon

the parties. But where such certainty of location cannot be made, the evidence of both parties must go to the jury and a motion to strike out the evidence offered by the one or the other could not properly be sustained unless the evidence so stricken out were so slight as to be wholly insufficient to sustain a verdict based upon it. If the corner called for in the deeds relied upon by the plaintiff was so clearly described as to leave no doubt about the particular point in the river, the interpretation of the deed by the court would necessarily involve the consideration of the latent ambiguity arising from the fact that there are two Dry Fork Rivers, or rather two distinct and separate channels of the Dry Fork River. At least the claim of two such channels set up by the defendants and the evidence introduced in support thereof could not be ignored. For these reasons the ruling of the court on the motion to exclude was proper. That there is evidence tending to show the existence of the old channel and that the corner in dispute is located in or near it is undeniable.

Though the defendants are not estopped to deny that the agreed corner is located in the so-called new channel the deeds of December, 1884, limit and narrow the scope of their resistance to that proposition. This phase of the case is not presented here upon any proper exception, but, as upon other grounds hereinafter to be noted, the judgment must be reversed and the cause remanded for a new trial, the proper conduct of that trial and the ends of justice require that the effect of the deeds in the determination of the controversy should be indicated. The description of the line in the deeds under which the defendants claim bearing date in November, 1880, differs from the description given in the deeds in which they joined, conveying interests to the plaintiff and her co-tenant, S. Lee White, and bearing date in December, 1884. The former described the line as being 125 poles long and running to the sugar and elm on a course south 20 west, while the other deeds described it as being 104 poles long and running from the sugar and elm on a course north 8½———. In the deed executed by the heirs of Thomas S. White to the heirs of Harvey White, the description of which is followed in subsequent deeds, the course is stated to be north 8½ degrees east. As the monument is not so described that it can be found with absolute certainty, the courses and distances

mentioned in the deeds control, if they can be reconciled, and, if not, either course or distance may be preferred, as shall best comport with the manifest intention of the parties and with the circumstances of the case. *Ruffner v. Hill,* 31 W. Va. 428. In thus seeking the true location of the corner, ought all these deeds with their irreconcilably inconsistent descriptions or calls to be given to the jury? That depends upon whether the defendants are estopped by the execution of the deeds of December, 1884, from relying upon the description contained in their own deeds of an earlier date. If so, the description of the disputed line and corner contained in the deeds of November, 1880, ought not to go to the jury. It is true that each of the deeds of December, 1884, only conveyed an undivided one-eighth of the tract of land. Neither of them purported to convey more than the one-eighth. But Mrs. White, the defendant, was a tenant in common with the plaintiff holding under the same title. Their title and boundary lines were of the same character and co-extensive. Admitting the location of that boundary line at a particular place for her own purposes, namely, as defining the territorial extent of her undivided one-eighth, she fixed the same limit for the other seven-eighths. Her husband, though having no title in himself other than his contingent estate by the curtesy, joined in the deed. As to the one-eighth, they are both estopped to claim against those deeds. Herman on Est. sections 573, 605. A married woman's conveyance estops her as to the estate thereby granted. Herman on Est. 716. *Schaffner v. Grutzmacher,* 6 Ia. 137. It is true that the recitals in the deed of a married woman are limited to the estate which she has at the time, and do not estop her from showing that they are false. Herman on Est. 716; *Griffin v. Sheffield,* 38 Miss. 359; *Banks v. Banks,* 101 U. S. 240; but Mrs. White, at the time the deeds of December, 1884, were made, neither had nor claimed any estate in either of the two tracts of land except the one-eighth which she conveyed. Having conveyed all of her interest by that deed, and now not setting up any after acquired title, she could not be permitted to make a defense except by allowing her to deny the plain terms of her deed. Having parted with all her title in the land claimed by the plaintiff and taken her husband's land by conveyance from him, she can assert no greater right under the title conferred by his deed than he could.

By the deeds of December, 1884, he purports to convey the land according to the calls of those deeds. He could not now go beyond the limits fixed by those deeds without contradicting the terms thereof. As she stands now in his shoes in respect to the same land, holding exactly the title that he held, her claim can go no further than his could have gone. "Any person claiming under one who is bound by an estoppel, is himself bound by the same estoppel." Herman on Est. 720. "Privies, or those who derive title from or through the parties, ordinarily stand in the same position as the parties, and are bound by every estoppel that would have been binding on the parties." *Id.* The application of the principle of estoppel is resisted by counsel for the defendants on the ground that there is no warranty in the deeds of December, 1884. But there may be an estoppel without warranty. The distinction between a mere estoppel by deed and title by estoppel must be kept in mind. A conveyance without warranty by mere estoppel cuts off the assertion of any title or claim which the grantor had at the time of the conveyance, but it will not operate to pass to the grantee any title afterwards acquired by the grantor. If, however, there is a general warranty in the deed it not only cuts off the existing title of the grantor but precludes him from setting up any after acquired title. It does more. Such after acquired title enures to the benefit of the grantee and passes to him. "The old rule of law was: where one, by a deed of bargain and sale, or lease and release, conveyed, that to which he had no title, he was estopped by his deed from claiming an after acquired title in it. But this rule has been repeatedly set aside, and the law at the present time is, that where one conveys land to which he has no title by deed of bargain and sale, without a covenant of warranty, a subsequently acquired title will not inure to the benefit of the bargainee, even as against the bargainor and his heirs." Herman on Est. section 653. "A warranty creates an estoppel which not only binds the grantor but takes effect upon every subsequent interest which he acquires and transfers it immediately to the grantee." Herman on Est. section 654. Here, no after acquired title, the passing of which by estoppel is dependent upon the presense of a covenant of warranty in the deed is involved, and the question is, whether, when there is no warranty, the grantor can assert, contrary to his conveyance and its

recitals any title which he had, or claimed to have, at the time of the conveyance, and it falls under an entirely different principle of law, resting upon the general doctrine that a man shall not defeat his own act or deny its validity to the prejudice of another. In *Taylor* v. *Shufford,* 15 Am. Dec. 512, 514, Henderson, Judge, said: "I think the counsel is wrong in attributing the estoppel to the warranty. The estoppel arises entirely out of the affirmation of matters of fact made in the deed. He has confounded estoppels and rebutters; things essentially different in their nature, although frequently producing the same results. A rebutter operates on the right of action to the estate. It operates as to strangers as well as between parties and privies, which is a consequence flowing from its operation on the right to the estate. An estoppel operates entirely as to facts; its effect is to conclude the parties from making, and of course, proving the facts to be otherwise than they are stated or acknowledged to be in a deed or other transaction out of which the estoppel arises." A party who has admitted a fact in his deed is estopped not only from disputing the deed, but every fact which it recites and so are all persons claiming under and through him. *Stow* v. *Wise,* 7 Conn. 214. As the case stands, Mrs. White asserts no title in the land owned by the plaintiff. Her defense is that the boundary line of her own land derived from her husband by conveyance is at a place different from where it was claimed to be by the plaintiff. The husband, before conveying the land to her, by his deed said that the line should run from the sugar and elm on a course north 8 1-2 degrees east to an agreed corner in the middle of Dry Fork River. By this, he bound himself to the ascertainment of the corner and the line by that description. She takes the land subject to the same limitation as to boundary. By the aid of this description and any extrinsic evidence which may be introduced tending to show the location of the agreed corner, it is to be found, but the deeds of November, 1880. if objected to, giving different courses and descriptions cannot be permittted to go to the jury as evidence of the location of the boundary line.

At the instance of the defendants, the court gave the following instructions over the objection of the plaintiff:

"1.  The court instructs the jury that the plaintiff must recover on the strength of her own title and not on the weakness

of the title of the defendant, and unless she shows title derived from the Commonwealth of Virginia, or this State, then she can only recover by actual, continuous, adverse, open and exclusive possession, under color or claim of title to the land in controversy for ten successive years next before the bringing of this suit."

"2. The court further instructs the jury, that unless they believe form the evidence that the plaintiff, or those under whom she claims title, have had actual, visible, adverse, exclusive and continuous possession of the lands in controversy, under color or claim of title for ten successive years next before the bringing of this suit, then they shall find for the defendant."

"3. The court further instructs the jury that if they believe from the evidence that the defendants, or either of them have had actual, continuous, visible, adverse and exclusive possession of the lands in controversy or any part thereof, under claim or color of title within ten years next preceeding the bringing of this suit, then they shall find for the defendant, unless they should further believe that the plaintiff has had actual, continuous, adverse, visible and exclusive possession of some part of said lands, when they shall find for the plaintiff only such part of said lands in controversy as she has had in possession as aforesaid."

"5. The court instructs the jury, that if they believe from the evidence that the defendants or any person claiming under them, or either of them, have had actual, continuous, adverse, open and exclusive possession of the lands in controversy, or any part thereof, under color or claim of title. within ten years next preceding the bringing of this suit, then it makes no difference what agreement the defendant, Uriah White, had with Thomas S. White, or any other person, as to an agreed corner, and they must find for the defendants."

To the first of these instructions, there are two objections. First, it requires the defendant to show title derived from the Commonwealth of Virginia or of this State, unless she has made out a good title upon adverse possession under the statute of limitations. Against the propriety of this requirement, it is urged that the plaintiff and defendants have derived their titles from a common source, which makes it unnecessary for the plaintiff to trace her title from the State. The general rule is, that

the plaintiff must recover on the strength of his own title. He must make out a perfect title showing a grant from the State. *Witten* v. *St. Clair* 27 W. Va. 762; *Coal Co.* v. *Howell,* 36 W. Va. 489; *Low* v. *Settle,* 32 W. Va. 600; 10 Am. & Eng. Enc. Law, 2 Ed. 481. "No length of chain of paper title which does not reach the sovereignty of the soil is sufficient of itself to constitute *prima facie* evidence of title." 10 Am. & Eng. Enc. Law, 2 Ed. 484; Newell on Eject. 585. But the general rule is subject to very important qualifiications. *Witten* v. *St. Clair, supra.* These qualifications rest upon the principle of estopped for the most part. "According to the general rule, this proposition means that he can recover only on the strength of his title as being good against the whole world, or as being good against the defendant by estoppel." 10 Am. & Eng. Enc. Law, 2 Ed. 481. In the examination of the decisions touching paper title, this expression is found to have been used by nearly all the courts. The estoppel which renders it unnecessary to make out a complete chain of title from the government, the original source, arises in numerous ways. Thus in *Witten* v. *St. Clair,* JUDGE SNYDER gives illustrations in the following language: "As where the defendant has entered under the title of the plaintiff and in subordination thereto as tenant, trustee, co-parcener or licensee. * * Likewise, when a party in peaceable possession of land is entered upon and ousted by one not having title to, or authority to enter upon the land." Where both parties assert title from a comon grantor and no other source, the estoppel arises. 10 Am. & Eng. Enc. Law, 2 Ed. 491; Newell on Eject. 579. Most, if not all, these exceptions to the general rule stand upon the principle of estoppel. It is certainly true of the one grounded upon common source of title. "Where parties claim title from one person as a common source, they are estopped from denying the title of the original claimant from whom they derive title." Herman on Est. section 593.

The position that the tiles of the plaintiff and defendants were derived from a common source is not tenable. That of the plaintiff is derived from Thomas S. White, while that of the defendants comes from Thomas S. White and Allen J. Currence. The one title was owned by Thomas S. White alone, while the other was owned by himself and another person in common. The mere fact that Thomas S. White was a co-tenant of Allen

J. Currence would not estop the latter from claiming title to the full extent of his deed, although such claim might be hostile to an adjoining tract owned in its entirety by his co-tenant. As to the tract owned by them in common, there was a privity between them, but none as to the other tract.  From this, it is apparent that the two titles in conflict do not come from the same source   However, as by their deeds, the defendants are estopped to deny the title of the plaintiff, as has been already shown, it is unnecessary for her to make out a chain of title from the State.  By their deeds, they expressly recognize her title, and this is as full, complete, direct and immediate an estoppel as could arise from their holding under titles from a common grantor.  As the basis of practically all these exceptions to the general rule is estopped, it is sufficient, however it may arise.  This being true, the instruction, in so far as it requires the plaintiff to go back to the State as the source of her title, is erroneous.

The next objection to the first instruction, if sound, is good against all the others, for, if the alleged impurity is found to exist in it, it has been carried into and infects all the others. This objection is that the instruction tells the jury that, in order to make out a title to adverse possesion, that possession must have been actual, continuous, adverse, open and exclusive under color or claim of title for ten consecutive years *next before the bringing of the suit,* the contention being that such possession for any period of ten years, whether next before the bringing of the suit or not, if prior thereto, ripens into a good title, and that it need not be continued down to the time of the commencement of the action.  Newell on Eject. 736, says: "If a person holding lands in adverse possession abandon the same before the expiration of the statutory period, his abandonment will, of course, amount to an interruption of the possession of the most effective kind; but if the abandonment occurs after the adverse holding has ripened into a title, it will be otherwise. The law requires of the claimant holding adversely nothing but an adverse possession for the period required.  As the period closes, his possession ripens into a title without any additional acts upon his part."  Under our statute, such possession for  ten  years gives perfect title, not a mere right to continue the possession, not a title to be lost by mere temporary abandonment of actual

possession. It is not only a defensive title, but one which will sustain an action of ejectment as effectually as a deed or a grant. If, after title is acquired by adverse possession, the holder thereof loses the actual possession, he may maintain an action to regain it just as if he had a perfect paper title. *Sutton* v. *Pollard,* 96 Ky. 640. In *Parkersburg Industrial Co.* v. *Schultz,* 43 W. Va. 470, 475, JUDGE BRANNON, delivering the opinion of the Court, said: "The statute itself confers and invests title in the occupant as effectually as does descent, devise, or grant, so that he may not only defend, but if afterwards another enter upon the land, he may maintain ejectment on the title conferred by the statute, though he may not have the scratch of a pen to show title." This is supported by the citation of numerous authorities.

As the fundamental proposition of law laid down by the foregoing authorities has been clearly violated in that part of instruction No. 1, which requires the adverse possession of the plaintiff to have been for ten consecutive years next before the bringing of her suit, instead of allowing her to show a period of ten years of such possession at any time prior to the bringing of the suit, the court erred in giving it. By inspection of the remaining instructions, given at the instance of the defendants, it is apparent that they followed the same rule. The second contains a repetiion of the objectionable language found in the first. The third tells the jury that if the defendants, or either of them, have had adverse possession under claim or color of title within ten years next preceding the institution of the suit, the verdict should be for the defendant. It is an enunciation of the same proposition in different form and language. In substance, the last instruction is the same as the third and equally erroneous.

The plaintiff requested the court to give the following instruction, which was refused:

"The court instructs the jury that although they may believe from the evidence that the defendants, or one of them, have introduced in evidence such a title which in the absence of proof as to the possession of the land in controversy by the plaintiff would be held to be a perfect written title and entitle the defendants to a verdict in their favor, yet if the jury further believe from the evidence that the plaintiff and those under whom

she claims were in the uninterupted, honest, continued, exclusive, visible, notorious, hostile and adverse possession of the land in controversy under colorable claim of title for more than ten years and that the defendant just a short time before the institution of this suit entered upon the land in controversy, claiming the same that then such prior possession of the plaintiff and those under whom she claims entitles the plaintiff to recover in this action and the jury should find for the plaintiff." While perhaps a little informal, this instruction is substantially correct in its statement of the law and should have been given.

For the reasons here given, the judgment is reversed, the verdict set aside and the case remanded for a new trial.

*Reversed.*