# CHARLESTON.

STATE *v.* LEWIS H. PAINTER *et al.*

Submitted February 26, 1924.    Decided May 6, 1924.

1.   TAXATION—*Assessment of Portion of Tract in Name of True Owner Held Not to Save Other Portion Previously Conveyed from Forfeiture for Non-entry.*

The owner of a tract of 100 acres conveyed therefrom certain parcels, one of which was for about twelve acres. The deed for the latter tract was lost and never recorded. Upon a survey of the residue of the 100 acre tract it was found that there remained 82 acres; the owner thereof conveyed the coal thereunder, by metes and bounds. Thereafter his land was assessed as "82 acres surface"; he was assessed with no other lands. The twelve acre parcel not being entered for taxation in the name of the true owner, the assessment of the "82 acres surface" in the name of the owner thereof, the former owner of the 12 acre parcel, will not save the latter tract from forfeiture for non-entry.   (p. 414).

2.   DEPOSITIONS—*Competency of Testimony as to Transaction With Insane Person Determined When Deposition is Used, and Not When Taken.*

Within the meaning of section 23, chapter 130, Barnes' Code 1923, a party testifies in his own behalf when his deposition is used in the cause, not at the time when it is actually taken; and though the witness was competent to testify when his deposition was taken, his testimony can not properly be considered, if he is incompetent to testify when his deposition is proposed to be used in the cause.   (p. 411).

Appeal from Circuit Court, Fayette County.
Suit by the State against Lewis H. Painter, O. M. Hall

and others. From a decree adverse to the State, the defend-
ant Hall appeals.

*Affirmed.*

*C. R. Summerfield* and *Poffenbarger, Blue & Dayton,* for
appellant.

*Dillon, Nuckolls & Mahan* and *Price, Smith & Spilman,*
for the State.

MEREDITH, PRESIDENT:

This suit was brought by the commissioner of school lands
for the sale of a tract as forfeited in the name of Lewis H.
Painter for non-entry for taxation and non-payment of taxes
thereon for the years 1881 to 1919 inclusive. It is alleged in
the bill that the tract sought to be sold contains 10¼ acres,
but the court found it contains but 7.57 acres.

The bill was filed at December Rules, 1919. Lewis H.
Painter, O. M. Hall, Harvey Coal & Coke Company, J. S.
Thurmond and C. T. Thurmond as administrators with the
will annexed, of W. D. Thurmond, deceased, Rosa M. Harvey,
and the heirs and devisees of W. D. Thurmond, deceased,
claimants, were made defendants. Hall answered the bill,
claiming title to the tract in fee by deed from Lewis H.
Painter and wife, dated May 26, 1919; he denied there was
any forfeiture, but asked and claimed the right to redeem,
should the court find that the land had become forfeited.
Lewis H. Painter did not answer. Defendant, Harvey Coal
& Coke Company, answered, claiming title in fee to the sur-
face, that is the whole of the land except the minerals, and
a right to mine the coal under a lease from W. D. Thurmond
and Morris Harvey, former owners in fee of the minerals.
Rosa M. Harvey, transferee of Morris Harvey, and the per-
sonal representatives, heirs and devisees of W. D. Thurmond,
answered, claiming the fee in the minerals, subject to the
mining lease held by said company. The company, Rosa M.
Harvey and the Thurmonds deny the right of the state to
sell the land as forfeited; they admit that the title thereto
of Lewis H. Painter was forfeited for non-entry and non-
payment of taxes, but aver that the title so forfeited has

been transferred to and vested in them by virtue of posses-
sion and payment of taxes under color of title; they assert
title to the coal and other minerals is in Rosa M. Harvey and
the heirs of W. D. Thurmond, deceased, and the title to the
surface is in the Harvey Coal & Coke Company; they show
their respective title papers and claims; they pray that Hall
may be enjoined from prosecuting his action of ejectment
brought since the institution of this suit to recover possession
of the land, and that his deed from Painter be cancelled as
a cloud on their title.    The pleadings were amended from
time to time, bringing in new parties, due to the death of Rosa
M. Harvey and Lewis H. Painter pending the suit. Volumin-
ous depositions were taken, and on February 16, 1923, a final
decree was entered, by which the court found:

"(1)    That the tract of land mentioned and de-
scribed in the plaintiff's bill as containing 10¼ acres
alleged therein to be forfeited for non-entry upon the
land books of Fayette County in the name of Lewis H.
Painter for the years 1881 to 1919, inclusive, does not
contain 10¼ acres, but contains only 7.57 acres.
"(2)    That the same has been omitted from the land
books for assessment and taxation in the name of Lewis
H. Painter since the year 1881 and no taxes paid there-
on by the said Lewis H. Painter, and, therefore, any
interest owned by him therein has become forfeited to
the state of West Virginia for non-entry upon the land
books, and non-payment of the taxes thereon.
"(3)    That J. W. Coleman sold said tract of land
and executed title bond therefor and delivered the same
to Arthur B. Duncan, and that Arthur B. Duncan while
in possession of the same, under claim of title, conveyed
the same to John G. Hurt by deed dated the 28th day
of July, 1876, under which deed John G. Hurt imme-
diately took possession thereof and had the same charged
to him upon the land books and paid the taxes thereon
until the year 1880; that John G. Hurt and wife con-
veyed the coal and other minerals thereunder to Morris
Harvey and W. D. Thurmond by deed dated the 19th
day of May, 1880, together with the coal and other min-
erals in other lands adjoining the same, and that since
the last said date the said Harvey and Thurmond and
those claiming under them have caused the coal and
minerals under said tract of land to be charged to them
upon the land books and continuously kept the same

upon the land books and paid all the taxes charged and assessed thereon; and that the said John G. Hurt and those claiming under him have had the surface thereof charged to them upon the land books and paid the taxes thereon since the said deed of May 19, 1880, for said minerals; and that the said John G. Hurt and those claiming under him, and the said Harvey and Thurmond and those claiming under them have had the actual and continuous possession of the said mineral and surface of said lands since the date of said deeds to them; and that by reason of said color of title, possession and payment of the taxes, the said Harvey and Thurmond and John G. Hurt were in position to take the benefit of said forfeiture. All of which is shown by documentary evidence filed in this cause.

    "It is, therefore, ordered, adjudged and decreed that the said tract of land is not subject to sale for the benefit of the State School Fund; that the title of the said Lewis H. Painter therein has been forfeited to the state for non-entry upon the land books and non-payment of the taxes thereon; that by virtue of the laws and Constitution of this state, Morris Harvey and W. D. Thurmond were at the time of said forfeiture in position to take the benefit thereof as to the coal and other minerals; as to the surface of said tract of land, that is, the said land other than the coal and minerals, that John G. Hurt was at the time of said forfeiture in position to take the benefit thereof."

The decree is adverse to the state and to Hall. Hall alone appeals.

At the outset, we need to obtain a general view of the situation. The disputed tract is chiefly valuable for the coal and mining rights. In 1912 the Harvey Coal & Coke Company began mining operations thereon, driving one of its main entries through it to reach its coal in a large area in the rear, and it is now using this entry in its mining operations under its lease from Harvey and Thurmond, dated May 29, 1893. There was also some timber on the land, which appears to have been for the most part removed in recent years by Harvey Coal & Coke Company, claimant of the surface under its deed from W. S. Johnson, dated March 16, 1908, though it appears that former claimants from time to time also to some extent cut and removed timber therefrom.

While there is but one small tract directly involved, the history of three larger tracts enters into the controversy. On May 28, 1872, Blake and Harvey conveyed to Lewis H. Painter 100 acres on Meadow Fork Creek in Fayette County. The deed to Painter is not in the record, though all parties seem to concede its existence and that Painter so acquired title to the 100 acre tract. On August 13, 1870, Charles Windsor conveyed to J. G. Hurt 100 acres adjoining the Painter tract on the southwest; the division line between the two tracts runs from a "gum and red oak N. 58 W. 200 poles to a white oak and dogwood on a ridge." Southeast of these two tracts, but adjacent to each is a tract containing 103 acres, which was conveyed by Blake to Coleman May 31, 1856. The line between this tract and the other two 100 acre tracts extends along the Windsor-Hurt tract from a gum, hickory and chestnut N. 59, E. 123 poles to a gum and red oak, a corner to the Painter 100 acres, and thence along the Painter line N. 58, E. 63 poles to a black oak, white oak and dogwood on a ridge. This is merely a general description of the lay-out of the surrounding lands. It more clearly appears from the accompanying map.

The 7.57 acre tract comes out of the Painter 100 acres, and is marked on the map at the corners with the letters "M", "F", "R", and "D". Hereafter we will refer to the 100 acres conveyed to Hurt by Windsor as the "Windsor tract", and to the 103 acre tract as the "Coleman tract".

Sometime prior to 1876, but just when does not appear, Painter traded a tract of 10 or 12 acres off the southeastern end of his farm to his brother, James Painter, receiving therefor a horse; he made no deed to his brother, James Painter, without conveyance, sold it to John Harvey, who in turn sold it to J. W. Coleman, the then owner of the 103 acre tract, and which tract the 10 or 12 acre tract joined. The boundaries of this latter tract were not defined, but by reference to other deeds subsequently made and which will be hereafter referred to, we have no doubt that it covered the 7.57 acres in controversy. There is a sharp conflict on its location, and objection is made to the competency of certain evidence introduced by the appellees. This 10 or 12 acre parcel not only included the 7.57 acres but also a small triangular tract lying to the north-east and bounding thereon which was conveyed to J. B. Huddleston by Painter, as will later appear. On October 21, 1876, Painter and wife conveyed to J. B. Huddleston a parcel lying on the eastern boundary of the 100 acre tract, containing 9 A. 1 rod and 31 poles, and described it as adjoining *"the Coleman land* and the vendors, beginning on a black-oak, white-oak and dogwood, corner to Coleman and Painter ('C' on map) thence with Painter's line N 41 W 74 poles to two sourwoods on a branch ('E'), thence leaving Painter's line up the branch *S 16 W 46 poles to a white-oak and birch, near the branch* ('F'), S 77 E 69 poles to the beginning." This tract is clearly and definitely located; all so agree. The deed distinctly recognizes that it adjoins the then Coleman land. One common corner was at the "Black-oak, whiteoak and dogwood"; appellees claim that the "whiteoak and birch, near the branch" was the other; and that the line between these two points was where the two parcels "adjoined", not merely at the beginning point. That they are right we think will clearly appear from what follows.

Prior to 1876 Coleman sold the John Harvey 10 or 12 acre tract and the 103 acre tract to Arthur B. Duncan; the sale was evidenced by title bond, as shown by Duncan's testimony; no deed was made. Duncan sold out of the 103 acre tract a small parcel containing 5 or 6 acres to J. B. Huddleston, located in the northeastern corner, and cornering on the Painter 100 acre tract. Though sold prior to 1876, the deed for this small parcel was not made until March 19, 1879. Duncan also sold to Hiram Johnson prior to 1876, a parcel adjoining this Huddleston tract, containing 9 acres 1 rood and 26 poles, located in the southeastern corner of the 103 acre tract, but no deed therefor was made until June 2, 1892. We can say that these two sales were made prior to July 28, 1876, because on that date Duncan and his wife conveyed to John G. Hurt, the owner of the adjoining Windsor 100 acres, the residue of the Coleman 103 acre tract, and the 10 or 12 acre parcel he had acquired from John Harvey, which came out of the Painter 100 acre tract. The conveyance to Hurt contains the following:

"The said parties of the first part doth grant . . . . unto John G. Hurt, the party of the second part, 86 acres, more or less, *known as the Coleman farm, not to include a portion sold to J. B. Huddleston, and Hiram Johnson, and also including the tract of land which John Harvey sold to James W. Coleman and the said Coleman* to the party of the first part."

This deed clearly excepted the Huddleston 5 or 6 acre tract and the Johnson 9 A. 1 R. and 26 poles; it also as clearly included the John Harvey tract, formerly part of the Painter 100 acres. The appellees claim that this included the 7.57 acres in controversy and the triangular tract to the east of it, conveyed later by Painter to Huddleston, noted on the map by the letters "F", "R" and "C". The deed of Duncan and wife to Hurt was supplemented by another deed, dated July 1, 1896, covering the same land, in which Alexander Evans and his wife joined. Evans had, prior to the execution of the first deed to Hurt, agreed to exchange lands with Duncan; by this exchange Duncan acquired title to the farm near Oak Hill on which he now lives, and the sale having been made to Hurt, the deed for Duncan's land was made direct

to Hurt instead of to Evans; hence the deed of July 1, 1896, was made by Duncan and Evans jointly to pass whatever equitable interest Evans might have in the Duncan tract,— 86 acres off the Coleman 103 acre tract and the 10 or 12 acre John Harvey tract. Immediately after acquiring the Duncan land, John G. Hurt moved from his Windsor 100 acre tract to the Coleman tract, where he continued to reside for many years. He is now an old man, but his testimony is clear; he says that he at once took possession of the tract in dispute, cut timber off of it, cleared part of it, fenced a part, if not all of it, pastured all of it, and claimed a fee simple estate in it under his deed from Duncan.

In 1879 or 1880 Morris Harvey and W. D. Thurmond began acquiring the coal in the vicinity of these lands. By deed dated April 27, 1880, Lewis H. Painter and wife conveyed to Harvey and Thurmond all the minerals, including the coal and mining rights, underlying the following described tract:

> "Beginning at a white oak and dogwood on a ridge corner to Hurt and Woods, N. 65° E. 127 poles to a black oak and two dogwoods on a ridge corner to James R. Blake, and with S. 41° E. 99 poles to a poplar and two sourwoods on a branch corner to J. B. Huddleston, and with S. 16° W. 46 poles to a white oak and birch corner to John G. Hurt, *and with* S. 35½° W. 34 poles to a stake, N. 58° W. crossing Meadow Fork Creek 168 poles to the beginning, containing 82 acres."

This 82 acres covered all the coal and other minerals underlying that part of the Painter 100 acre tract shown on the map bounded by the lines "A-B", "B-E", "E-F", "F-M", and "M-A". The call "S. 16 W. 46 poles to a white oak and birch, corner to John G. Hurt" in this deed is the same line called for in the deed made by Painter to J. B. Huddleston quoted above as "S. 16 W. 46 poles to white oak and birch, near a branch". The deed distinctly and unequivocally recognizes that the "White oak and birch" is a corner to the land of John G. Hurt; appellant does not deny that; he does claim, however, that the next call "and with S. 35½ W. 34 poles" does not mean to call for the line of John G. Hurt, it being admitted that this line is the northwestern

boundary of the 7.57 acres. We have no doubt that this call was meant to be "with same",—that is, with the line of John G. Hurt, thus recognizing John G. Hurt as the owner of the 7.57 acres.

On May 19, 1880, John G. Hurt conveyed to Morris Harvey and William D. Thurmond all the coal and other minerals underlying a tract "adjoining the lands of Lewis Painter, J. B. Huddleston and others", described by metes and bounds as follows:

> "Beginning at a whiteoak and dogwood on a ridge corner to Smith and Painter, and with the latter S 58° E crossing Meadow Fork Creek 168 poles to a stake, N 35½° E 34 poles to a white oak and birch corner to J. B. Huddleston, and with S 77° E 62 poles to a black oak, white oak and dogwood S 32° W 24 poles to a stake, S. 22½° E 25 poles to a stake corner to Mary L. Johnson, S 22½° E 36 poles to a stake at the road, thence with the road S 82½° E 22 poles to a stake in Sanger's line, and with S 58° W 180 poles to a stake near a branch, two dogwoods, chestnut and white oak pointers in Lewis Harvey's line, thence leaving Sanger, and with Harvey N 28½° W 88 poles to a stake in the edge of the road corner to James Blake, deceased, and with N 48° W 118 poles to a white oak and gum corner to L. J. Smith, and with N 14° E 92 poles to the beginning, containing 186 acres."

The beginning point as given is located at "A" on the map, and the descriptive lines as shown in the deed correspond to the following respective lines as shown on the map: "A-M", "M-F", "F-C", "C-G", "G-N", "N-O", "O-K", "K-L", "L-I", "I-H", and "H-A", thus including all of the Windsor 100 acres, the Coleman 103 acres, less the two small portions conveyed respectively to Huddleston and Johnson, and including the 7.57 acre parcel and the triangular tract lying adjacent thereto on the east, with corners designated by the letters "F", "C", and "R". These two latter parcels come out of the Painter 100 acres; appellees claim these two parcels, contained in the boundary "M-F-C-R-D", constitute what is called the "John Harvey" land,—the land that Lewis H. Painter traded to his brother James Painter; that James Painter sold it to John Harvey; Harvey

sold it to Coleman; Coleman sold it to Duncan; and finally Duncan sold and conveyed it to John G. Hurt on July 28, 1876. It is quite clear that no deed was made transferring the title to the John Harvey tract from Painter prior to July 28, 1876. That Painter recognized Hurt's interest in the 7.57 acres has been already shown; but he also recognized that Hurt had claim to the small triangle lying to the east, for on October 11, 1892, Lewis H. Painter and wife, for a recited consideration of $10.00, conveyed to J. B. Huddleston "by order of J. W. Coleman, Sr. and J. G. Hurt", as recited in the deed the tract "F-C-G." John G. Hurt testifies that he sold this tract to Huddleston in order to straighten Huddleston's line; it is apparent from the map that this tract cut Huddleston's lands in two parts, the 9 acres 1 rood and 25 poles he had obtained from Painter and the 5 or 6 acres he had acquired from Duncan joining only at one corner, the point marked "C" on the map. Painter had not transferred the legal title to the John Harvey tract; so after Hurt sold the small tract to Huddleston, marked on the map by the letters "F-C-G" he had Painter convey it direct to Huddleston; hence the deed therefor shows it was made upon the order of Hurt and Coleman, Coleman's order being required, doubtless, because he had not made a deed therefor to either Duncan or Hurt for his equitable interest. Hurt testifies that within a few days after Painter made this deed to Huddleston, Painter and wife made him a deed for the remainder of the John Harvey tract, that is, the parcel in controversy, and that he delivered this deed to Morris Harvey for record as hereinafter detailed.

Mrs. Elmira Painter, wife of Lewis H. Painter, denies that she and her husband made any such deed to John G. Hurt. Her testimony is not very clear, but we understand her claim is that the land Lewis H. Painter traded to his brother James did not include the 7.57 acres, but covered the 9 acres 1 rood and 25 poles conveyed to Huddleston October 21, 1876, and the second tract conveyed him by Painter October 11, 1892. But there is evidence to the contrary. The first of these deeds says the 9 A. 1 rood and 25 poles "adjoins the Coleman land and the vendors". To "adjoin" the Coleman land it must

do so along the line from "F" to "C" on the map. Mrs. Painter says that when the trade was made between her husband and James Painter, they did not "run it out, they just sighted it off by a small ravine that comes down". The evidence shows there is a small ravine along the line "M-F", bounding in a general way the 7.57 acre tract, and the deeds show that the "white oak and birch", a corner to the 7.57 acres, stands on or near a branch. There is other evidence showing that Lewis H. Painter not only never made any claim to this land from the time he sold to his brother James, and certainly made none from the time John G. Hurt bought it from Duncan, July 28, 1876, until very recently when it was discovered that the deed he had made for it was lost and had never been recorded,and that when the Virginian Power Company was purchasing a right of way for a power line through his lands he told its representative he had no interest in the disputed tract; a number of other witnesses testify that he disclaimed owning any interest in it. It appears that the Harvey Coal & Coke Company is a subsidiary of The New River Company and that the properties in the vicinity of that in question are generally known as The New River Coal Company's property; so as late as August 14, 1914, when Lewis H. Painter and wife conveyed 16.7 acres to their daughter, Emma S. Painter, and which adjoins the 7.57 acre tract, they described it as "Beginning at a fence post, corner to the New River Coal Company and Emma S. Painter, thence with the former S. 54° 30′ E. 559 feet to a stake, N. 38 E. 580 feet to an oak tree, *corner to same* and Burkholder", the latter having acquired the Huddleston tract; this was another distinct admission on the part of Painter that the line "N. 38 E. 580 feet", which is the boundary line between the main body of the Painter 82 acres and the 7.57 acre tract, separated his land from the land of the New River or Harvey Coal & Coke Company, for at that time the latter company claimed title to the surface of the 7.57 acres by deed from W. S. Johnson. After John G. Hurt had purchased the Coleman 103 acre tract, less what had been sold off to Huddleston and Hiram Johnson, and had got therewith a deed from Duncan for the John Harvey tract he moved to

the Coleman farm and lived there for many years. On August 5, 1905, he conveyed to G. A. Poteet 83 acres, reserving all the minerals, as these had already been sold and conveyed by him to Morris Harvey and W. D. Thurmond, by deed dated May 19, 1880. This 83 acre tract covered in part the Windsor 100 acres, in part the Coleman 86 acres, and all of the 7.57 acres. On March 5, 1906, Poteet conveyed it to W. S. Johnson, who in turn on March 16, 1908, conveyed it to Harvey Coal & Coke Company. That company thus acquired a deed for the surface land.

A. number of witnesses testified in the cause, principally as to the location of the disputed tract and the character of the possession thereof by the claimants or their predecessors in title. Objections were made to the testimony of J. S. Thurmond and John G. Hurt, witnesses for appellees, on the ground that Lewis H. Painter was insane at the time the depositions were taken, and that their testimony related to personal communications or transactions with Painter, and is therefore incompetent under section 23, chapter 130, Code. There is no clear proof that Painter was insane; the evidence merely shows that he was feeble in body and mind and that at times his mind was unbalanced. Counsel for both sides therefore base their arguments as to the competency or incompetency of the testimony upon the question whether he was sane or insane when the depositions were taken. They overlook the fact that Painter died before the final hearing, and his son, C. E. Painter, as his administrator, was made a defendant by amended bill; that the competency of evidence is to be determined as of the time it is read on hearing or when it is used,—not as of the time it is taken. *Seabright* v. *Seabright,* 28 W. Va. 412. It may be competent when taken, but rendered incompetent on hearing or at trial by the death of an adverse party. So it becomes unnecessary to consider further whether Lewis H. Painter was insane.

Witness J. S. Thurmond, a son of W. D. Thurmond, and a party to this suit, testified that when Painter sold his coal, witness was employed to survey the coal lands in that vicinity, including the Painter coal; that before Painter made his coal deed, witness surveyed his coal; that the tract in dispute

was then cut off from the main body or 82 acre tract by him at Painter's direction; that this tract so set off joined the Huddleston tract on the east; that he wrote the Painter coal deed from his field notes; a day or two after making the Painter survey, he surveyed the two small parcels off the Coleman tract which Duncan conveyed,—one to Huddleston, the other to Johnson; that when he surveyed the 7.57 acre tract, Painter told him that J. G. Hurt was getting it.

Witness John G. Hurt testified that a few days after Painter made the second deed to Huddleston, Painter also made a deed to Hurt for the disputed tract; he details the circumstances under which it was written by Slaughter; says that he delivered it to Morris Harvey, who was to have it recorded, but failed to do so.

Lewis H. Painter did not testify, but his wife, Elmira Painter, did. She denied that she and her husband ever executed a deed to Hurt for the tract in controversy. There are some other matters to which she refers; for instance, she says that James Painter gave her husband a horse for the James Painter tract and a suit of clothes. She admits her husband got the horse, but says that when her husband conveyed the nine acres one rood and twenty-five poles out of the James Painter land to J. B. Huddleston, her husband did not get the $28.75 consideration named in the deed, leaving the inference that Coleman got it. Now we must remember that the rule excluding testimony of personal transactions or communications under section 23, chapter 130, Code, is a two-edged sword, and it cuts both ways. J. W. Coleman, John Harvey and J. B. Huddleston are dead. James Painter is living, but he was not called as a witness. His testimony would probably be for the most part incompetent, as we are bound to so hold in the first instance that of Thurmond and Hurt insofar as it relates to personal communications or transactions with Lewis H. Painter. Under this same rule, Mrs. Painter's testimony that her husband did not receive the consideration named in the Huddleston deed, insofar as it is to be inferred that Coleman got it would also have to be excluded. By the same rule, other testimony given by her could be excluded. She is interested in the result of this

suit; so are her children, three of whom also testified; one of them was appointed administrator of his father's estate and made a party to the cause, for the reason that under the agreement which Hall made with Lewis H. Painter, when he bought the land, Hall is to pay part of what he receives from the sale of the coal and timber in controversy to Painter or his administrator. Their testifying in behalf of Hall, which in effect is the same as testifying in their own behalf, makes competent much of the testimony of Hurt which would otherwise be incompetent, so much of it in fact that the part that should be excluded is practically negligible. It does not, however, render competent the testimony of J. S. Thurmond, as they do not, so far as we recall, mention any of the transactions or communications detailed by him; hence we must disregard all his testimony touching any personal communication or transaction had with Lewis H. Painter.

The foregoing covers the main facts. We therefore have a case where the Thurmond and Harvey heirs and devisees claim the coal and mining rights in fee, subject to the mining lease; the Coal Company claims the mining leasehold and a fee in the surface; O. M. Hall claims both surface and minerals in fee, or if forfeited to the state, then the right to redeem.

The first point to be determined is whether the title of Lewis H. Painter to the minerals or to the surface land, or both, has been forfeited. For the years 1874 and 1875, Painter was assessed with 100 acres at $5.00 per acre; in 1876, with 83¾ acres; from 1877 to 1880, with 79 acres; these assessments were at $5.00 per acre. It will be recalled that on October 21, 1876, he conveyed to J. B. Huddleston 9 acres, 1 rood and 25 poles; the deed was recorded the same day. The reduction from 100 to 83¾ acres in 1876 could not have been on account of the Huddleston sale, as that would not appear on the land books until the next year. It therefore must have been on account of the James Painter sale, which the record shows was prior to or about 1876, the exact date being unknown. In 1881 he was assessed with 82 acres, "surface" at $4.50 per acre; there appears for that year a marginal note on the land-books "Mineral transferred to Harvey and Thurmond". They had purchased the coal under

the 82 acres the preceding year. For 1882 he was assessed with 82 acres "surface" at $4.50 per acre; from 1883 to 1890, 82 acres "surface" at $5.00 per acre; 1891, 82 acres "surface" at $3.38 per acre, with marginal note "min. to Harvey and Thurmond"; from 1892 to 1904, with 82 acres "surface" at $3.38 per acre; in 1905, with 78 acres "surface", having transferred 4 acres to his daughter, Lena Bailey; from then until 1919 he was assessed with varying but smaller acreages of "surface", due to transfers to his children; in 1919 it was but 48.18 acres "surface". He was assessed with "surface" only from 1881 to 1919. During this period he was assessed with no other lands. On July 28, 1876, Duncan conveyed to Hurt the residue of the Coleman 103 acres, as 86 acres, more or less, not including the tract sold off to Huddleston and Johnson, but including the John Harvey tract. The 103 acre tract was assessed to Coleman from 1866 to 1879; beginning in 1879, it was assessed at 86 acres to J. G. Hurt, and so in 1880; in 1881 he was assessed with 86 acres "surface"; there appears a marginal note in the land-books for that year "Mineral Tr. to Harvey and Thurmond". From 1882 to 1902, at 86 acres "surface"; 1903, 81½ acres "surface", 4½ acres having been transferred to J. C. Hurt; in 1904 and 1905, at 81½ acres "surface", with a notation on the land books in 1905 of the transfer to G. A. Poteet, and from Poteet to W. S. Johnson; in 1906, 1907 and 1908, W. S. Johnson was assessed with 81½ acres "surface"; in the latter year a note is made of the transfer of 24.75 acres to Harvey Coal & Coke Company; from 1909 to 1920, the 24.75 acres "surface" was charged to that company; this tract includes the 7.57 acres.

It is contended by appellant's counsel that Painter never conveyed the legal title to the 7.57 acres, and hence when his surface was assessed at 82 acres it included the 7.57 acre tract, and consequently there could be no forfeiture of the 7.57 acres for non-entry. We do not question the proposition that when a tract of land is assessed it is assessed as a tract and not merely as "acres"; the quantity may be more or less than the true acreage, but so long as the tract is assessed there can be no forfeiture for non-entry. But that Lewis H. Painter

never conveyed the legal title to this tract, both surface and minerals, we can not believe. It matters not whether he conveyed it to J. W. Coleman or to John G. Hurt; we feel sure that he conveyed it to the one or the other. Let us disregard Hurt's testimony about his deed and assume that Painter did not convey it to him. Then take the testimony of Mrs. Painter, along with the known deeds made by Painter, the testimony of his neighbors that he not only made no claim to the land for more than thirty years, but that he repeatedly disclaimed ownership, and we are led irresistibly to the conclusion that he did convey the title to some one. Mrs. Painter says, in speaking of the tract her husband traded to his brother James, that James Painter traded it to John Harvey and Harvey traded it to Coleman, and "We (meaning herself and husband) made a deed to Coleman to it once and he lost it he claimed before he got home." This, of course, passed the legal title, notwithstanding the fact that the deed was lost. Where was it located? That is the crucial question. Mrs. Painter says "they didn't run it out, they just sighted it off by a small ravine that comes down." She did not even see them "sight it off". She heard them talk about it, but her description agrees with the contention of the appellees. When we look to the deeds made by Painter they establish it. The first is the deed to Huddleston, dated October 21, 1876, in which the 9 acres, 1 rood and 25 poles is described as adjoining "the Coleman land and the vendors, beginning on a black-oak, white-oak and dogwood, corner to Coleman and Painter, thence with Painter's line N. 41 W. 74 poles to two sourwoods on a branch, thence leaving Painter's line up the branch S. 16 W. 46 poles to a white-oak and birch, near the branch, S. 77 E. 69 poles to the beginning." There is not a word showing this deed was made at Coleman's instance, nor that the price of $28.75 mentioned in it was received by Coleman; to the contrary, the receipt of it is acknowledged by Painter. The second deed made by Painter was his deed for the coal, dated April 27, 1880. In that the "white-oak and birch" (at "F" on the map) is designated as a corner to John G. Hurt; the next call is "and with S. 35½ W. 34 poles to a stake." We have not the slightest doubt but that this means "and with same",—that is "and with the line

96 W. Va.

of John C. Hurt''; this is the division line between the 7.57 acres and Hurt's 82 acre tract. A comparison of this call with the preceding call along the Huddleston line—''and with S. 16 W. 46 poles'', but adds emphasis to this conclusion. A third deed made by Painter to his daughter Emma S. Painter, dated August 14, 1914, unequivocally recognizes this line as the division 'line between Painter's land and that of the New River or Harvey Coal and Coke Company. A deed for a power line right of way made by the daughter to the Virginian Power Company also recognizes that the Coal Company is the owner of the 7.57 acre tract. In the face of all these solemn admissions by deed, Lewis H. Painter and his heirs and assigns are estopped from claiming title beyond that line. *Summerfield* v. *White*, 54 W. Va. 311, 46 S. E. 154.

Lewis H. Painter having conveyed the legal title to the land beyond that line including the two Huddleston parcels, had the remainder surveyed before he made his coal deed and found that he owned then but 82 acres. This tract was severed by conveyances from the parcels sold and conveyed. He conveyed his coal, hence he left that off the land-books. He for the same reason, doubtless, did not enter for taxation the parcels sold and conveyed to Huddleston and Coleman or Hurt. He did not want to pay taxes on land he did not own. So from then onward the parcels he had conveyed were not assessed to him. The 7.57 acre tract and the triangle conveyed to Huddleston were both forfeited for non-entry; that the latter was so forfeited was judicially determined in another forfeiture proceeding. We are therefore of opinion that the Painter title to the 7.57 acre tract, surface and minerals, became forfeited for non-entry.

The second point is whether the title so forfeited has, by reason of possession and payment of taxes, under color of title, been transferred to and vested in the Harvey Coal & Coke Company as respects the surface land, and in the Harvey and Thurmond heirs and devisees as to the minerals. The court so held. There is some conflict in the testimony upon the question of continuous possession of the surface. John G. Hurt and his assigns stoutly contend that ever since his purchase from Duncan in 1876 he continued in posses-

sion until after he conveyed to Poteet in 1905; that he fenced it, though it is probable that his fence took in more land than he actually claimed; that he cleared and cultivated part of it; cut timber upon it and used the whole tract for pasture. The Harvey Coal & Coke Company acquired its deed in 1908; it cut timber thereon and exercised rights of ownership over it. We think the court was justified in finding that Hurt and his assigns maintained possession of the land sufficient to divest the state's title, it clearly appearing from the record that the taxes were paid thereon from 1908 onward. The coal deed made by Hurt clearly covered the minerals under the disputed tract; that furnished color of title. Since 1912 the Harvey Coal & Coke Company has been mining coal and using the entry thereon. That the taxes have been regularly assessed and paid upon the coal ever since Hurt's deed in 1880, by Harvey and Thurmond or their heirs and devisees, we think can not be seriously questioned. The court was therefore justified in finding that the title to the tract of 7.57 acres, forfeited to the state, had become transferred from the state and vested in the appellees as ascertained by its decree. It necessarily follows that Hall has no right to redeem.

For the foregoing reasons, the decree is affirmed.

*Affirmed.*