# CHARLESTON

Feder, Admr., *v.* Hager *et al.*

Submitted February 18, 1908.　Decided December 2, 1908.

1. Forcible Entry and Detainer—*Grounds of Action.*
   Entry upon land by any person other than the legal owner is unlawful, if it be without the owner's consent; and one in such unlawful possession may be ousted by the owner in an action of unlawful entry and detainer, if suit is begun within three years, though the legal title to the land is the only question involved. (p. 455.)

2. Public Lands—*Deed by Commissioner of School Lands—Evidence of Title.*
   Except as changed by statute, a deed of the Commissioner of School Lands is not alone evidence of conveyance of title from the State, but such parts of the record of the court proceedings upon which the deed is based as show forfeiture of the land or title thereto in the State are necessary as *prima facie* evidence that the deed carried the State's title. (p. 456.)

3. Same—*Deed by Commissioner of School Lands—Court Proceedings in Support.*
   The court proceedings introduced to support the deed are not evidence that the State had title which was thereby conveyed, if they contain no reference to such fact of title. (p. 457.)

4. Same—*Deed by Commissioner of School Lands—Evidence of Title.*
   Section 19, chapter 105, of the Code, as amended by the Acts of 1905, wherein reference is made to such deed as evidence, applies only to suits and proceedings under said chapter. (p. 457.)

5. Deed of the Commissioner of School Lands as Evidence of Title.
   It is not herein decided, because not pertinent, how far section 2, chapter 76, of the Acts of 1907, may make such deed, recorded more than ten years, evidence of title in the State in suits begun after the enactment of that section. (p. 457.)

Error to Circuit Court, Boone County.

Unlawful entry and detainer by Julius C. Feder, administrator, against John W. Hager and another. Judgment for plaintiff, and defendants bring error.

*Reversed and Remanded.*

Vinson & Thompson and Leftwich & Byrnside, for plaintiffs in error.

Payne & Payne, for defendant in error.

ROBINSON, JUDGE:

The defendants in this action of unlawful entry and detainer complain of a judgment against them for possession of land. It is conceded that plaintiff in his representative capacity, pursuant to the will of his decedent, may recover lands of the latter. But defendants say that an improper view of the case was taken by the court below, in this, that plaintiff could recover by showing simply that he was the true owner of the land, and that they were not in possession under him. And, they assert, even if such view be correct, that plaintiff did not prove ownership or true title.

Plaintiff based his right to recover upon the will of his decedent, a deed to the latter from one Smith, and a deed to Smith from Thompson, Commissioner of School Lands, introducing with the last named deed a report of sale of the land made by said commissioner, a plat and survey therewith, and a decree confirming the sale and authorizing the commissioner to execute deed to Smith, the purchaser   Evidence was also introduced by plaintiff identifying the land occupied by defendants as the same for which he claimed title as aforesaid. It was admitted that there had been proper entry, assessment, and payment of taxes as to plaintiff's title.

Defendants showed that they were tenants of the Yawkey and Freeman Company, Limited, which claims title to the land in controversy by a deed from Charles H. Freeman, to whom Henry A. McCarthy, trustee, had conveyed such right, title and interest as he had, by a deed reserving within the boundary lines of the land described any and all lands to which there were no adverse claimants, and, specifically, without warranty against the title of the State, unpaid taxes, or otherwise. It was admitted that these deeds embraced the land in controversy. It also appeared that this company, prior to this action, had recovered a judgment for possession of the land against one Sutphin, who claimed to be a tenant of the plaintiff herein. Sutphin moved from the land; and another claiming as tenant of plaintiff herein moved into the house, but remained only a day or two. Then these defendants went into possession as tenants of said company; and later plaintiff began this action against them.

Defendants sought to introduce as evidence a prior lease of

the land by said company to Rufus Canterberry, but the
court excluded it.   The lease under which defendants claimed
to hold was also denied admission in evidence.   At the con-
clusion of the trial, defendants moved the court to direct a
verdict for them.   This motion the court denied, and
defendants excepted.   An instruction on behalf of plaintiff
to the jury is complained of by defendants, and the refusal to
give one requested by them is also assigned as error; like-
wise, the refusal of the trial court to set aside the verdict
and grant the defendants a new trial.

The exclusion of the lease to Canterberry was not error.
It does not appear to have been pertinent to a correct view
of the case as presented.   Nor do we think that defendants
were prejudiced by the exclusion of the lease under which
they claimed to hold, since their tenancy was otherwise fully
established, if, in fact, not admitted.   The instruction given
for plaintiff is justified by *Lawson* v. *Dalton*, 18 W. Va. 766.
It only submitted to the jury the law of limitation of three
years as to the action, and did not submit, as contended, the
question of law as to what constitutes unlawful detainer.   The
judgment for possession in favor of the Yawkey and Freeman
Company against Sutphin was not binding against plaintiff,
who was not a party to that action, and could have no par-
ticular weight under the facts as made out by the whole case.

Can one out of possession, showing good title, prevail, in
an action of unlawful entry and detainer, over one in posses-
sion under an inferior title?   Why not?   The right of pos-
session belongs to title.   The true owner surely is entitled to
possession of his property as against one not in possession by
his consent.   True it is that this action relates only to posses-
sion, and determines only the right to possession.   It does not
settle or adjudicate title.   But title may be the proof show-
ing that one is entitled to the possession; in other words, the
action may turn on proof of title.   In many cases in which
this action is invoked, the ownership of the land may be im-
material, but not in all.   For years it has been reiterated:
"The entry of the legal owner is unlawful if forcible, and
the entry of any other person is unlawful whether forci-
ble or not." *Duff* v. *Good*, 24 W. Va. 682; *Olinger* v.
*Shepherd*, 12 Grat. 462.   Let us change the words, but not
the mandate, and we say:   The entry of any person other

than the legal owner is unlawful, no matter how he enters, if it be without the owner's consent. And any one in such unlawful possession may be ousted by an action of unlawful entry and detainer, if suit is begun within three years after the unlawful entry. Code, chapter 89, section 1. In *Chancey* v. *Smith*, 25 W. Va. 407, it is said: "In order to maintain an action of unlawful entry or detainer it is essential that the plaintiff shall have actual possession or the right to the possession, and that the defendant should be a wrong-doer, but where he has the right it is not essential that he should also have the actual or physical possession, the *pedis possessio*, at the time the unlawful entry is made by the defendant." The owner certainly has the right to the possession, and anyone who enters without his consent is a wrong-doer at the time such unlawful entry is made. "The owner or he who has the right to the possession, if he acquires the possession peaceably and without force, will not be compelled by this action to restore the possession to an actual occupant who has no right to the possession." *Duff* v. *Good*, *supra*. And upon the same principle—the right to possession—the owner may recover the possession by this action against one who has no right to it. Moreover, this question of right of possession may turn solely upon proof of which has the better title, in determining the true owner. So it was held in *Corbett* v. *Nutt*, 18 Grat. 624: "A proceeding of unlawful detainer may be maintained against a party in unlawful possession of land, where such unlawful possession has not continued for more than three years, though the legal title to the land is the only question involved in the cause."

Then we conclude that if plaintiff proved that he was owner of the land, it was proper that he should recover the possession against defendants, since they were in under another. But did plaintiff show perfect title to the land as against defendants or the company under which they claim to hold? Defendants did not pretend to show complete title in their landlord. They were contented with showing claim or color under the two deeds mentioned as relied on by them. Their theory was, as noted by the refused instruction, that if they were in under *bona fide* claim of other title than plaintiff's, they could not be ousted in this action. But, as we have seen, this is not true as against the owner. The instruction was

properly refused. It ignored the law that the true owner may recover possession against such claimant. Plaintiff's title was regularly traced to a deed for the land from the Commisssioner of School Lands. Such deed, regularly founded, is a grant from the State. *State* v. *Jackson*, 56 W. Va. 558. It seems that plaintiff meant to observe that "no length of claim of paper title which does not reach the sovereignty of the soil is sufficient of itself to constitute *prima facie* evidence of title." *Summerfield* v. *White*, 54 W. Va. 311. But he did not go far enough. The recitals of a deed of this character are not sufficient evidence. *Christy* v. *Minor*, 4 Munf. 431; *Dequasie* v. *Harris*, 16 W. Va. 353. The report of this commissioner to the court simply showed that he had sold this land, reciting that it was under a decree. The plat and survey describe the land. The report of sale refers to such description, and the deed conveys by the same. True, there is a decree confirming the sale and authorizing the Commissioner of School land to convey. But nowhere is it shown that the lands, vested in the State by forfeiture or otherwise, became liable to sale and were so proceeded against and sold as aforesaid. In short, the exhibited papers of the procedure upon which the deed is based do not show that the State had title to sell. Therefore, the papers do not take the title to the State. To go there you must go to the forfeiture, or vesting of the title in the State. Proof of this forfeiture or vesting is a step in tracing to the "sovereignty of the soil." We think the authority of the commissioner to make the deed is properly proved, but it is not simply a question of this authority. Did the State have title to sell? Not enough of this judicial proceeding is shown to enable us to say it had. Not even the decree for sale, or any report or declaration of a forfeiture, or title in the State is shown. No forfeiture, or title in the State, appears anywhere. Shall we infer that the State had title which it could sell in such proceeding, simply because a Commissioner of School Lands reported that he sold the land, and the court confirmed the reported sale and directed him to make deed to purchaser, which he did? No. In a matter as sacred as title, proof should be demanded, not inference. For all we can see, and so far as the proof before the jury disclosed, the land reported and confirmed as sold by the commissioner, and by him deeded, may never

have been vested in the State. "No confirmation can aid a void title." 2 Minor 322; *Boon* v. *Simmons*, 88 Va. 259. If the commissioner's deed under consideration "was a conveyance of the commonwealth's right, made under authority of law in the appointed mode," then "those who connect themselves with such conveyance connect themselves in derivation of title with the commonwealth." *Coal Co.* v. *Howell*, 36 W. Va. 504. Was it a conveyance of right in the commonwealth made under the law in the appointed mode? It must be shown that it was. The record of the proceedings to sell the land would be *prima facie* evidence of this, if it there appeared. *Coal Co.* v. *Howell, supra.* But the papers of that record introduced failed to show that the State had any right or title. If there was a single declaration in such record that the land proceeded against was forfeited, treated as forfeited or belonging to the State, it would be *prima facie* evidence of such fact. If a report of State lands liable to sale, by the proper officer, or decree of sale reciting such report, treated the land as belonging to the State, it would be sufficient until rebutted. *Strader* v. *Goff*, 6 W. Va. 268. But suppose such report or decree had been produced and that either disclosed that the land was treated as that of a private individual, never vested in the State, we are certain that no one would say that it was evidence of title in the State. It may be said that section 19 of chapter 105, as amended by the Acts of 1905, makes the deed alone *prima facie* evidence of the forfeiture and sale thereunder. But from the purposes and context of the chapter, we must say that the section aforesaid applies only to the suits and proceedings provided for therein. We must construe it strictly. *Dequasie* v. *Harris*, 16 W. Va. 345. The Legislature has not seen fit to give to such deed as the one now before us the sweeping effect as evidence that it has given to tax deeds by section 29, chapter 31, of the Code. How far section 2, chapter 76, of the Acts of 1907, may apply, we need not inquire, since it is made not to effect evidence in suits already pending, as this action was. So we say that plaintiff by his evidence did not show that the commissioner's deed transferred title from the State. Not tracing his title to the State, he did not prove that he was the owner of the land.

Since the only claim made by plaintiff upon which to base

his right to recover possession was that he was the true owner and, therefore, entitled as against defendants, who claim under another, and since he failed to show, by tracing title to the State, that he was such owner, the motion to direct a verdict for defendants should have been granted. In view of this, we reverse the judgment, set aside the verdict, and remand the case for a new trial.

*Reversed and Remanded.*