IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2013 Term

————————

No. 12-0150

————————

**FILED**

**June 18, 2013**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

TRIBECA LENDING CORPORATION,
Petitioner

v.

JAMES E. MCCORMICK,
Respondent

_____

Certified Questions from the Circuit Court of Kanawha County
The Honorable Tod J. Kaufman, Judge
Civil Action No. 11-C-1210

CERTIFIED QUESTIONS ANSWERED

_____

Submitted:  April 16, 2013
Filed: June 18, 2013

Christopher R. Arthur, Esq.
Lora A. Dyer, Esq.
Lesley A. Wheeler-Hoops, Esq.
Samuel I. White, P.C.
Charleston, West Virginia
Counsel for the Petitioner

Thomas A. Heywood, Esq.
Sandra M. Murphy, Esq.
Stuart A. McMillan, Esq.
Bowles Rice McDavid Graff & Love LLP
Charleston, West Virginia
Counsel for Amici Curiae, West Virginia
Bankers Association, Inc., and Community
Bankers of West Virginia, Inc.

Sara Bird, Esq.
Mountain State Justice, Inc.
Clarksburg, West Virginia
Daniel F. Hedges, Esq.
Bren J. Pomponio, Esq.
Mountain State Justice, Inc.
Charleston, West Virginia
Counsel for the Respondent

JUSTICE KETCHUM delivered the Opinion of the Court.

JUSTICE DAVIS concurs, in part, and dissents, in part, and reserves the right to file a separate opinion.

SYLLABUS BY THE COURT

1.      "The appellate standard of review of questions of law answered and certified by a circuit court is *de novo*."  Syllabus Point 1, *Gallapoo v. Wal-Mart Stores, Inc.*, 197 W.Va. 172, 475 S.E.2d 172 (1996).

2.      "Interpreting a statute or an administrative rule or regulation presents a purely legal question subject to *de novo* review."  Syllabus Point 1, *Appalachian Power Co. v. State Tax Dept. of West Virginia*, 195 W.Va. 573, 466 S.E.2d 424 (1995).

3.      "Where the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation."  Syllabus Point 2, *State v. Elder*, 152 W.Va. 571, 165 S.E.2d 108 (1968).

4.      The one-year statute of limitation provided by *W.Va. Code* § 38-1-4a [2006] governs only an "action or proceeding to set aside a trustee's sale due to the failure to follow any notice, service, process or other procedural requirement relating to a sale of property under a trust deed."  Challenges to a trustee's sale that do not pertain to the procedural requirements of the sale are not subject to the limitation period set forth in *W.Va. Code* § 38-1-4a.

5.      "Where a consumer is sued for the balance due on a consumer transaction, any asserted defense, setoff, or counterclaim available under the Consumer Credit Protection Act, W.Va. Code, 46A-2-101, *et seq.*, may be asserted without regard to any limitation of actions under W.Va. Code, 46A-5-102 (1974)."  Syllabus Point 6, *Chrysler Credit Corp. v. Copley*, 189 W.Va. 90, 428 S.E.2d 313 (1993).

i

6.	Under *W.Va. Code* § 46A-5-101(1) [1996], which provides that an action under the West Virginia Consumer Credit and Protection Act involving certain "regulated consumer loans" must be brought within one year after the "due date of the last scheduled payment of the agreement," the statute of limitation begins to run on the date under the parties' agreement providing for the final periodic payment of the debt. However, if the periodic payments are accelerated under the terms of the agreement, causing all payments to become immediately due and payable by the consumer, then the statute of limitation begins to run on the date when the accelerated payment is due.

Ketchum, Justice:

The petitioner, Tribeca Lending Corporation ("Tribeca"), received a deed to a house as a result of a foreclosure action. Tribeca filed an unlawful detainer action against the occupant of the house, respondent James E. McCormick, because Mr. McCormick refused to vacate the house. In response, Mr. McCormick asserted various counterclaims against Tribeca alleging violations of the West Virginia Consumer Credit and Protection Act, *W.Va. Code* § 46A-1-101 to -8-102 [1974].

The Circuit Court of Kanawha County has certified two questions for this Court's consideration regarding whether Mr. McCormick timely asserted his counterclaims. We determine that Mr. McCormick's counterclaims were not timely.

**I.**
**FACTUAL AND PROCEDURAL BACKGROUND**

The facts are not disputed by the parties. On September 30, 2005, Mr. McCormick refinanced the mortgage on his home in Saint Albans, West Virginia, with a loan he obtained from Tribeca.[1] The loan agreement provided that Mr. McCormick would repay the $116,900.00 loan to Tribeca, over the course of thirty years, by making monthly payments of $1,112.38. Tribeca's loan was secured by a deed of trust, also dated September 30, 2005, which similarly required Mr. McCormick to make payments of the loan's principal and interest in accordance with the loan's repayment schedule.

---

[1] Mr. McCormick avers that Tribeca solicited him to refinance his existing home mortgage and did not accurately disclose the loan's interest rate.

1

In addition to the loan repayment provisions, the deed of trust stated that if Mr. McCormick failed to make his scheduled payments, or otherwise defaulted on the terms of the loan agreement or deed of trust, Tribeca would give notice to Mr. McCormick and provide him an opportunity to cure his default. If Mr. McCormick then failed to cure his default, the documents allowed Tribeca to accelerate the loan's payments, saying "upon acceleration all sums . . . and accrued interest thereon shall at once become due and payable." The documents signed by Mr. McCormick permitted Tribeca to ultimately institute a foreclosure sale.[2]

Thereafter, Mr. McCormick failed to make his monthly loan payments in accordance with the parties' agreement. Consequently, on July 26, 2007, Tribeca sent Mr. McCormick a notice that he was in default and that he had a right to cure. Mr. McCormick failed to cure his default. Accordingly, Tribeca accelerated the loan's payments causing the balance of the loan to become immediately due and payable, and also invoked its right to initiate a foreclosure sale of the Saint Albans house.[3]

The foreclosure sale was held at a public auction on December 19, 2007. The property was sold to Tribeca. On January 8, 2008, a trustee's deed was recorded conveying ownership of the property to Tribeca.

---

[2] This description of the parties' underlying loan agreement is based upon the circuit court's order and representations in the parties' briefs. Neither the loan agreement nor the deed of trust is included in the parties' joint appendix.

[3] The trustee sent Mr. McCormick a notice of the trustee's sale on November 8, 2007, again requesting Mr. McCormick to repay the balance of his loan.

Later in 2008, Tribeca – as owner of the Saint Albans house – filed an unlawful detainer action[4] against Mr. McCormick in the Magistrate Court of Kanawha County, alleging that he was unlawfully occupying its property. Mr. McCormick removed Tribeca's action from magistrate court to the Circuit Court of Kanawha County[5] and asserted defenses and counterclaims to Tribeca's action (and which are similar to those he later asserted in the instant case). On September 25, 2009, the circuit court

---

[4] *W.Va. Code* § 55-3-1 [1923] permits the bringing of an unlawful detainer action:

> If any forcible or unlawful entry be made upon any land, building, structure, or any part thereof, or if, when the entry is lawful or peaceable, the tenant shall detain the possession of any land, building, structure, or any part thereof after his right has expired, without the consent of him who is entitled to the possession, the party so turned out of possession, no matter what right or title he had thereto, or the party against whom such possession is unlawfully detained, may, within three years after such forcible or unlawful entry, or such unlawful detainer, sue out of the clerk's office of the circuit court, or of any court of record empowered to try common-law actions, of the county in which the land, building, structure, or some part thereof may be, a summons against the defendant to answer the complaint of the plaintiff that the defendant is in the possession of, and unlawfully withholds from the plaintiff, the premises in question (describing the same with convenient certainty), to the damage of the plaintiff in such sum as the plaintiff shall state; and no other declaration shall be required.

[5] An action for unlawful detainer may be brought in magistrate court. *See W.Va. Code* § 50-4-5 [1992]. However, the defendant to such a proceeding may remove the case to circuit court where the amount in controversy exceeds $2,500. *See W.Va. Code* § 50-4-8 [2008] ("At any time before trial in a civil action involving two thousand five hundred dollars or more, any party may, upon payment of the circuit court filing fee, cause such action to be removed to the circuit court.")

dismissed Tribeca's action because there "ha[d] been no activity in this action for a period of more than one (1) year[.]"

On June 2, 2011, Tribeca filed a new unlawful detainer action against Mr. McCormick based upon his failure to vacate the Saint Albans home. The action was filed in magistrate court.

Mr. McCormick answered the complaint, and also asserted numerous counterclaims against Tribeca alleging violations of the Consumer Credit and Protection Act, *W.Va. Code* § 46A-1-101 to -8-102. Specifically, Mr. McCormick asserted counterclaims against Tribeca alleging unconscionable contract (Count I); fraud (Count II); fraudulent appraisal (Count III); and unlawful debt collection (Count IV). Again, Mr. McCormick removed Tribeca's unlawful detainer action to the Circuit Court of Kanawha County. Tribeca then moved to dismiss Mr. McCormick's counterclaims as untimely.

By order entered November 18, 2011, the circuit court conditionally granted Tribeca's motion to dismiss Mr. McCormick's counterclaims. The circuit court additionally certified the following two questions to this Court, which it answered as follows:

> 1. Is W.Va. Code § 38-1-[4a], which gives a borrower one year to challenge the validity of a foreclosure sale, and provides in applicable part that "no action or proceeding to set aside a trustee's sale . . . shall be filed or commenced more than one year from the date of the sale" applicable when counter-claims are asserted challenging the enforceability of the underlying mortgage loan agreement in response to an unlawful detainer action?
>
> [Answer:] **Yes.**

4

2.    Under W.Va. Code § 46A-5-101[1][6], which provides in applicable part that "[w]ith respect to violations arising from other consumer credit sales or consumer loans, no action pursuant to this subsection may be brought more than one year after the due date of the *last scheduled payment of the agreement*." (emphasis added)  When does the statute of limitations begin to run: the date the applicable Loan was accelerated and all amounts became due and payable; or, the projected date of the final installment payment of the executed loan agreement?

[Answer:] **The date the applicable Loan was accelerated and all amounts became due.**

(Emphasis in original).  From this order of certification, the parties[7] now seek this Court's answers to the questions posed.

## II.
## STANDARD OF REVIEW

The case *sub judice* presents two certified questions.  We review anew a circuit court's answers certified to this Court.  "The appellate standard of review of questions of law answered and certified by a circuit court is *de novo*."  Syllabus Point 1, *Gallapoo v. Wal-Mart Stores, Inc.*, 197 W.Va. 172, 475 S.E.2d 172 (1996).  Moreover, the circuit court's answers to the two certified questions in this case required the circuit

---

[6] The second question as written by the circuit court referenced *W.Va. Code* § 46A-5-101(a).  We presume the circuit court intended to refer to *W.Va. Code* § 46A-5-101(1) [1996], insofar as this statute does not contain a subsection (a) and subsection (1) is the first subsection of the statute.

[7] In addition to the named parties, we also acknowledge the appearance of Amici Curiae, the West Virginia Bankers Association, Inc., and the Community Bankers of West Virginia, Inc., in the instant proceedings.  We will consider their contributions in conjunction with the parties' arguments.

5

court to interpret statutory law. With respect to a circuit court's rulings on matters of statutory construction, we have held that "[i]nterpreting a statute or an administrative rule or regulation presents a purely legal question subject to *de novo* review." Syllabus Point 1, *Appalachian Power Co. v. State Tax Dept. of West Virginia*, 195 W.Va. 573, 466 S.E.2d 424 (1995). *Accord*, Syllabus Point 1, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995) ("Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review."). Accordingly, we will accord a plenary review to the circuit court's certified questions as well as to the circuit court's answers thereto.

# III.
# ANALYSIS

This Court is asked to answer two certified questions concerning the timeliness of the counterclaims that Mr. McCormick asserted in response to Tribeca's action for unlawful detainer. We will consider each question in turn.

## A. First Certified Question

The first question certified by the circuit court, rephrased to remove typographic errors, asks:

> Is W.Va. Code § 38-1-4a, which gives a borrower one year to challenge the validity of a foreclosure sale, and provides in applicable part that "no action or proceeding to set aside a trustee's sale . . . shall be filed or commenced more than one year from the date of the sale" applicable when counterclaims are asserted challenging the enforceability of

6

the underlying mortgage loan agreement in response to an unlawful detainer action?

The circuit court answered this question, "Yes."

The statute interpreted by the circuit court, *W.Va. Code* § 38-1-4a [2006], imposes a one-year statute of limitation on certain actions to set aside a deed issued after a trustee's foreclosure sale:

> Provided the grantor on the deed of trust or the agent or personal representative of the grantor is provided notice as required by section four of this article, no action or proceeding to set aside a trustee's sale due to the failure to follow any notice, service, process or other procedural requirement relating to a sale of property under a trust deed shall be filed or commenced more than one year from the date of the sale.

The parties dispute the meaning of this statute, and whether it applies to bar the counterclaims Mr. McCormick has asserted against Tribeca.

Tribeca argues that the circuit court correctly answered the first certified question in the affirmative. Tribeca asserts that any challenges that Mr. McCormick had to the trustee's December 2007 sale were required to be brought within one year from the date of the sale. Because nearly three and one-half years passed before Mr. McCormick sought to challenge the trustee's sale by asserting the instant counterclaims against Tribeca, Tribeca contends that Mr. McCormick's counterclaims are barred by the one-year statute of limitation set forth in *W.Va. Code* 38-1-4a.

By contrast, Mr. McCormick contends that the circuit court's answer to the first certified question was erroneous. He contends that *W.Va. Code* § 38-1-4a applies only to procedural challenges to a trustee's sale and not to the counterclaims he has

7

asserted under the Consumer Credit and Protection Act. Because he has not challenged the procedural posture of the trustee's sale, Mr. McCormick argues that the statute of limitation provided by *W.Va. Code* § 38-1-4a does not operate to bar his counterclaims against Tribeca. Upon our review of the language of the statute, we agree with Mr. McCormick's interpretation of *W.Va. Code* § 38-1-4a.

When interpreting a statute, we look first to the language of the enactment to ascertain the Legislature's intent in promulgating the legislation and to determine the meaning of the provision. "The primary object in construing a statute is to ascertain and give effect to the intent of the legislature." Syllabus Point 1, *Smith v. State Workmen's Comp. Comm'r*, 159 W.Va. 108, 219 S.E.2d 361 (1975). In ascertaining legislative intent, we also look to the language of the statute. If the statutory language is plain and does not lend itself to multiple constructions, the statute's plain language must be applied as it is written. Plain statutory language does not need to be construed. In other words, "[w]here the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation." Syllabus Point 2, *State v. Elder*, 152 W.Va. 571, 165 S.E.2d 108 (1968). *Accord Appalachian Power Co.*, 195 W.Va. at 587, 466 S.E.2d at 438 ("We look first to the statute's language. If the text, given its plain meaning, answers the interpretive question, the language must prevail and further inquiry is foreclosed.").

*W.Va. Code* § 38-1-4a sets forth the time period within which a challenge to a trustee's sale must be asserted: no "more than one year from the date of the sale." However, the statute further specifies the precise types of challenges that are subject to

8

this limitation period: an "action or proceeding to set aside a trustee's sale *due to the failure to follow any notice, service, process or other procedural requirement relating to a sale of property under a trust deed.*" *W.Va. Code* § 38-1-4a (emphasis added). We find this language to be plain in its specification that the only types of challenges to a trustee's sale governed by *W.Va. Code* § 38-1-4a are those that pertain to the procedural requirements of the trustee's sale. With the Legislature's express definition of the scope of this statute, it is apparent that the Legislature did not intend any other types of actions related to a trustee's sale to be governed by this one-year limitation period. *See State ex rel. Roy Allen S. v. Stone*, 196 W.Va. 624, 630 n.11, 474 S.E.2d 554, 560 n.11 (1996) ("'*Inclusio unius est exclusion alterius*,' the expression that 'one is the exclusion of the others,' has force in this case. This doctrine informs courts to exclude from operation those items not included in the list of elements that are given effect expressly by statutory language.").

Accordingly, we hold that the one-year statute of limitation provided by *W.Va. Code* § 38-1-4a [2006] governs only an "action or proceeding to set aside a trustee's sale due to the failure to follow any notice, service, process or other procedural requirement relating to a sale of property under a trust deed." Challenges to a trustee's sale that do not pertain to the procedural requirements of the sale are not subject to the limitation period set forth in *W.Va. Code* § 38-1-4a.

Applying this holding to the facts of the case presently before us, we find that the statute of limitation provided by *W.Va. Code* § 38-1-4a does not operate to bar Mr. McCormick's counterclaims. The counterclaims that Mr. McCormick asserted in

9

response to Tribeca's unlawful detainer action allege that Tribeca has violated various provisions of the Consumer Credit and Protection Act by allegedly committing the following acts: issuing Mr. McCormick an unconscionable loan; intentionally misrepresenting the amount of the loan's monthly payments and its escalating interest rate; relying on a fraudulent appraisal that misrepresented the market value of the Saint Albans house; and assessing illegal charges in its attempt to collect a debt from Mr. McCormick. None of Mr. McCormick's counterclaims challenge the procedural posture of the trustee's sale nor do his counterclaims allege a failure to comply with the procedural requirements of a trustee's sale. *W.Va. Code* § 38-1-4a does not apply to bar Mr. McCormick's counterclaims in this case.

Accordingly, we answer the first certified question in the negative.

### B. Second Certified Question

The circuit court's second certified question, rephrased to remove typographic errors, asks:

> Under *W.Va. Code* § 46A-5-101(1), which provides in applicable part that, "With respect to violations arising from other consumer credit sales or consumer loans, no action pursuant to this subsection may be brought more than one year after the due date of the *last scheduled payment of the agreement*." When does the statute of limitations begin to run: the date the applicable Loan was accelerated and all amounts became due and payable; or, the projected date of the final installment payment of the executed loan agreement?

(Emphasis in original). The circuit court answered this question, "The date the applicable Loan was accelerated and all amounts became due."

10

*W.Va. Code* § 46A-5-101(1) [1996] establishes the time periods within which a consumer may file a cause of action against a creditor who has allegedly violated the provisions of the Consumer Credit and Protection Act. The first subsection of *W.Va. Code* § 46A-5-101, upon which the second certified question is based, provides that:

> (1) If a creditor has violated the provisions of this chapter applying to collection of excess charges, security in sales and leases, disclosure with respect to consumer leases, receipts, statements of account and evidences of payment, limitations on default charges, assignment of earnings, authorizations to confess judgment, illegal, fraudulent or unconscionable conduct, any prohibited debt collection practice, or restrictions on interest in land as security, assignment of earnings to regulated consumer lender, security agreement on household goods for benefit of regulated consumer lender, and renegotiation by regulated consumer lender of loan discharged in bankruptcy, the consumer has a cause of action to recover actual damages and in addition a right in an action to recover from the person violating this chapter a penalty in an amount determined by the court not less than one hundred dollars nor more than one thousand dollars. With respect to violations arising from consumer credit sales or consumer loans made pursuant to revolving charge accounts or revolving loan accounts, or from sales as defined in article six of this chapter, no action pursuant to this subsection may be brought more than four years after the violations occurred. *With respect to violations arising from other* consumer credit sales or *consumer loans, no action pursuant to this subsection may be brought more than one year after the due date of the last scheduled payment of the agreement.*

(Emphasis added).

Tribeca argues that the circuit court correctly answered the certified question because Mr. McCormick's counterclaims are time-barred under *W.Va. Code* § 46A-5-101(1), which establishes a one-year statute of limitation. Tribeca asserts that the

11

limitation period began to run on the date that the loan's payments had been accelerated by the lender. Tribeca points out it accelerated Mr. McCormick's loan in 2007, but Mr. McCormick did not assert his instant counterclaims until 2011. Tribeca therefore contends that Mr. McCormick's counterclaims are untimely and barred.

Mr. McCormick argues that a different statute should control the resolution of this case because he has asserted his claims in the form of counterclaims. Mr. McCormick cites to *W.Va. Code* § 46A-5-102 [1974], which states that if a "consumer" is sued on a consumer loan, then the consumer may assert a counterclaim at any time. The statute states in full:

> Rights granted by this chapter may be asserted as a defense, setoff or counterclaim to an action against a consumer without regard to any limitation of actions.

*W.Va. Code* § 46A-5-102. We interpreted this statute in Syllabus Point 6 of *Chrysler Credit Corp. v. Copley*, 189 W.Va. 90, 428 S.E.2d 313 (1993), where we held:

> Where a consumer is sued for the balance due on a consumer transaction, any asserted defense, setoff, or counterclaim available under the Consumer Credit Protection Act, W.Va. Code, 46A–2–101, *et seq.*, may be asserted without regard to any limitation of actions under W.Va.Code, 46A–5–102 (1974).

Thus, Mr. McCormick argues that the circuit court was required to permit him to assert his counterclaims because, under *W.Va. Code* § 46A-5-102, a consumer's counterclaims are not subject to a statute of limitation. We disagree with Mr. McCormick, and while he is correct in his interpretation of the law, we find that *W.Va. Code* § 46A-5-102 has no application in this case.

12

As we observed earlier, we are bound to consider the language employed by the Legislature in the statutory schemes that it enacts. *See Appalachian Power Co.*, 195 W.Va. at 587, 466 S.E.2d at 438. In *W.Va. Code* § 46A-5-101(1), the Legislature specified the statutes of limitation for a "consumer" who chooses to bring a "cause of action."[8] Similarly, in *W.Va. Code* § 46A-5-102, the Legislature has stated that a "consumer" may assert a counterclaim under the Consumer Credit and Protection Act at any time. The obvious question, then, is whether Mr. McCormick was a "consumer" as defined by the Act.

The Legislature adopted the following definition of a "consumer" under the Consumer Credit and Protection Act:

> "Consumer" means a natural person who incurs debt pursuant to a consumer credit sale or a consumer loan[9], or debt or other obligations pursuant to a consumer lease.

---

[8] *See*, *e.g.*, Syllabus Point 6, *Dunlap v. Friedman's, Inc.*, 213 W.Va. 394, 582 S.E.2d 841 (2003) ("West Virginia Code § 46A–5–101(1) (1996) (Repl.Vol.1998) is a remedial statute to be liberally construed to protect consumers from unfair, illegal, or deceptive acts. In face of the ambiguity found in that statute, a consumer who is party to a closed-ended credit transaction, resulting from a sale as defined in West Virginia Code § 46A–6–102(d), may bring any necessary action within either the four-year period commencing with the date of the transaction or within one year of the due date of the last payment, whichever is later."). *See also*, Syllabus Point 7, *Barr v. NCB Management Services, Inc.*, 227 W.Va. 507, 711 S.E.2d 577 (2011) ("W.Va. Code § 46A–5–101(1) (1996) (Repl.Vol.2006) allows a consumer to assert a private cause of action against a professional debt collector who has engaged in debt collection practices that are prohibited by the West Virginia Consumer Credit and Protection Act, W.Va. Code § 46A–1–101 *et seq.*").

[9] *W.Va. Code* § 46A-1-102(15) [1996] provides the following definition of a "consumer loan:"

(continued . . .)

13

*W.Va. Code* § 46A-1-102(12) [1996]. As we understand Mr. McCormick's argument, he assumes that he is a "consumer" simply because he incurred a debt in 2005 pursuant to a consumer loan by Tribeca that was secured by the Saint Albans house. We disagree.

In the instant case, Tribeca is not pursuing any claims against Mr. McCormick on any consumer loan. Tribeca is pursuing its unlawful detainer action against Mr. McCormick because it alleges that he is wrongfully possessing land owned by Tribeca. It did not sue for any balance due on the 2005 loan or any loan deficiency from the 2007 trust deed sale. The unlawful detainer action was simply an action to recover possession of property Tribeca owned that was allegedly wrongfully possessed by another. "The remedy by unlawful detainer is a summary proceeding designed to protect the actual possession, whether rightful or wrongful, against unlawful invasion and afford speedy restitution." *Duff v. Good*, 24 W.Va. 682, 685 (1884). An unlawful detainer action "relates only to possession, and determines only the right to possession. It

---

"Consumer loan" is a loan made by a person regularly engaged in the business of making loans in which:

(a) The debtor is a person other than an organization;

(b) The debt is incurred primarily for a personal, family, household or agricultural purpose;

(c) Either the debt is payable in installments or a loan finance charge is made; and

(d) Either the principal does not exceed forty-five thousand dollars or the debt is secured by an interest in land or a factory-built home as defined in section two, article fifteen, chapter thirty-seven of this code.

14

does not settle or adjudicate title." *Feder v. Hager*, 64 W.Va. 452, 454, 63 S.E. 285, 286 (1908). As we said in *Wiles v. Walker*, 88 W.Va. 147, 150, 106 S.E. 423, 424 (1921):

> The action of forcible entry and detainer is solely possessory in nature. By it the one instituting the proceedings seeks merely to regain possession of land which he claims another is wrongfully withholding from him. The action does not permit or sanction a binding investigation or finding as to the true title or ownership of the property in dispute.

Tribeca asserts that it owns the Saint Albans house because it purchased the deed to the house at a foreclosure sale in December 2007. Hence, it has filed the instant unlawful detainer action to recover possession of the house from Mr. McCormick. Tribeca claims Mr. McCormick is wrongfully withholding its house. Tribeca has not asserted any claims against Mr. McCormick relating to the 2005 loan, mortgage, or any other consumer debt. It has not asserted any claim for money, damages, or any balance that may be due on the 2005 debt. Tribeca's claim is based solely on its ownership of a house that it claims Mr. McCormick is unlawfully possessing.

On this record, Mr. McCormick is not being sued by Tribeca as a "consumer" under the West Virginia Consumer Credit and Protection Act. *See W.Va. Code* § 46A-1-102(12); Michelle L. Evans, *Who Is A "Consumer" Entitled to Protection of State Deceptive Trade Practice and Consumer Protection Acts*, 63 A.L.R.5th 1, § 2[a] (1998) ("In order to impose liability under a state deceptive-trade-practice and consumer-protection act, it is necessary that the injured party be a consumer entitled to protection under the act."). *See generally*, Anthony Paul Dunbar, *Consumer Protection: The Practical Effectiveness of State Deceptive Trade Practices Legislation*, 59 TulaneL.Rev.

15

427, 458 (1984). Because Tribeca has not brought "an action against a consumer," Mr. McCormick is not entitled to assert any "defense, setoff or counterclaim . . . without regard to any limitation of actions" under *W.Va. Code* § 46A-5-102. Accordingly, any claims asserted by Mr. McCormick are subject to the one-year limitation period set forth in *W.Va. Code* § 46A-5-101(1).[10]

The second question posed by the circuit court necessitates that we determine when the one-year limitation period begins to run under *W.Va. Code* § 46A-5-101(1). The statute states that the limitation period begins to run on the "due date of the last scheduled payment of the agreement."

Mr. McCormick contends that the phrase "scheduled payment" means only one thing: the periodic payments scheduled by the loan, with the last such payment occurring on the date of maturity. Mr. McCormick's counsel asserts that the mortgage loan from Tribeca was scheduled for 360 monthly payments to begin in 2005, with a scheduled maturity in 2035. Mr. McCormick therefore argues that the one-year statute of limitation on any action under the Consumer Credit and Protection Act would not begin to run until 2035.

Tribeca, however, contends that the "due date of the last scheduled payment of the agreement" can (if the agreement so provides) include the date that a loan was accelerated and all amounts became due. The Consumer Credit and Protection Act

---

[10] If Tribeca were to assert claims arising under the loan agreement or mortgage, then Mr. McCormick would be within his rights to assert his counterclaims under the Consumer Credit and Protection Act at any time.

defines an "agreement" as "the bargain of the parties in fact as found in their language or by implication from other circumstances including course of dealing or usage of trade or course of performance." *W.Va. Code* § 46A-1-102(2). Tribeca argues that the 2005 loan agreement and mortgage papers stated that once Mr. McCormick defaulted on his loan agreement, the scheduled monthly payments ceased, the loan was accelerated, and the full amount was due in one final payment. In 2007, Tribeca notified Mr. McCormick that he was in default and his loan payments accelerated. Tribeca therefore asserts that the one-year statute of limitation began to run on that date, expired in 2008, and that Mr. McCormick's 2011 claims were untimely. We agree.

This Court has consistently held that, "[i]f the language of an enactment is clear and within the constitutional authority of the law-making body which passed it, courts must read the relevant law according to its unvarnished meaning, without any judicial embroidery." Syllabus Point 4, *West Virginia Health Care Cost Review Authority v. Boone Memorial Hosp.*, 196 W.Va. 326, 472 S.E.2d 411 (1996). When the language of a statute is unambiguous, we must apply the plain meaning of the words that the Legislature has employed. Syllabus Point 1, *State v. Elder*, *supra*.

We believe that the language of *W.Va. Code* § 46A-5-101(1) is unambiguous because the phrase at issue, "the date due of the last scheduled payment of the agreement," plainly refers to the last date under the parties' agreement providing for payment of a specified loan amount. The agreement of the parties specified that Mr. McCormick agreed to make loan payments to Tribeca on a monthly basis for 30 years, but if he defaulted on his agreement, Tribeca could then accelerate the payments and

17

make them immediately due and payable. When Mr. McCormick defaulted, Tribeca was within its rights to demand full payment on the loan in 2007 and to later sell the house at a public auction. Conversely, Mr. McCormick would have been fully within his rights to have defended against Tribeca's demand by asserting his claims under the Consumer Credit and Protection Act.

Two federal courts reviewing this same question have reached the same result. Judge Goodwin, in *Delebreau v. Bayview Loan Servicing, LLC*, 770 F.Supp.2d 813 (S.D.W.Va. 2011), concluded that if a loan agreement had a clause requiring a creditor to "accelerate the debt – and thereby make the last payment due immediately" upon the default of the consumer, then the only reasonable conclusion was that the one-year statute of limitation under *W.Va. Code* § 46A-5-101(1) was triggered by the acceleration. 770 F.Supp.2d at 821. The federal court specifically rejected the consumer's argument that the statute of limitation would not be triggered until the last scheduled payment was due decades in the future:

> Under the plaintiffs' reading, an action against a creditor could be brought as many as fifty years after a violation of the WVCCPA occurred — even if the plaintiff paid the entire balance of the loan on the first payment — provided that the loan's maturity date, and thus the "last scheduled payment," was fifty years in the future. I sincerely doubt that the West Virginia legislature meant to allow plaintiffs a half-century in which to bring claims under the WVCCPA. Additionally, the plaintiffs' reading leads to the absurd conclusion that a consumer plaintiff may bring a cause of action for statutory violations that occurred decades beforehand. In fact, under the plaintiffs' reading, a plaintiff could bring a cause of action within one year of the maturity date of a loan, even if the borrower paid off the entire loan in the second year of the agreement. Likewise, if the borrower

18

> defaulted in year three of a thirty-year loan, he could sit on his WVCCPA claims until some twenty-eight years later. This interpretation is particularly troubling in light of the fact that modern home loans regularly have a maturity date that is ten, twenty, or even fifty, years in the future.

770 F.Supp.2d at 821. The Fourth Circuit Court of Appeals, reviewing the same case, affirmed the district court and reached the same conclusion. *Delebreau v. Bayview Loan Servicing, LLC*, 680 F.3d 412, 415 (4th Cir. 2012).

We conclude that under *W.Va. Code* § 46A-5-101(1), which provides that an action under the West Virginia Consumer Credit and Protection Act involving certain "regulated consumer loans" must be brought within one year after the "due date of the last scheduled payment of the agreement," the statute of limitation begins to run on the date under the parties' agreement providing for the final periodic payment of the debt. However, if the periodic payments are accelerated under the terms of the agreement, causing all payments to become immediately due and payable by the consumer, then the statute of limitation begins to run on the date when the accelerated payment is due.

The second question certified by the circuit court asks:

> Under *W.Va. Code* § 46A-5-101(1), which provides in applicable part that, "With respect to violations arising from other consumer credit sales or consumer loans, no action pursuant to this subsection may be brought more than one year after the due date of the ***last scheduled payment of the agreement***." When does the statute of limitations begin to run: the date the applicable Loan was accelerated and all amounts became due and payable; or, the projected date of the final installment payment of the executed loan agreement?

19

We determine that the circuit court correctly answered that when Mr. McCormick's loan with Tribeca was accelerated, the statute of limitation began to run on the date when the accelerated payment was due.

Certified Questions Answered